PERRY and others
*v.*
SHARPE and another.* } Civil Action at Law.  Upon motions to dismiss attachments.

SAME
*v.*
SAME. } In Equity.  Upon motion to dissolve injunction.

(*Circuit Court, S. D. Ohio, E. D.*  July 23, 1881.)

1. ACTION FOR DECEIT—ATTACHMENT—(1) JURISDICTION—DEFENDANT SUMMONED IN ANOTHER COUNTY—SECTIONS 5031, 5038, OHIO REV. ST.—(2) ORDER OF ATTACHMENT—ALLOWANCE BY JUDGE—SECTION 5565, OHIO REV. ST.—(3) ATTACHING GOODS ALREADY IN SHERIFF'S HANDS UNDER EXECUTION—(4) DISMISSING ATTACHMENT UPON EX PARTE TESTIMONY WHEN GROUND OF ATTACHMENT ALSO BASIS OF THE ACTION—PRACTICE.

Plaintiffs filed a petition in the common pleas court of Fairfield county, Ohio, alleging that upon the faith of certain false and fraudulent misrepresentations, made by defendants to them, they gave defendant P. a line of credit for a large stock of goods which they sold him; that, subsequently, defendant S. obtained a judgment by confession against P., upon certain notes which P. had given to S. as a part of the fraud, and levied executions upon P.'s stock of goods in Lancaster, Fairfield county, Ohio, for about the full value thereof; that about the time said executions were levied they discovered the fraud, and immediately notified P. of the rescission of the contract of sale and credit, and offered to return the notes, etc., given therefor, and demanded a return of their goods, which was refused; and claiming damages for such deceit. Plaintiffs also filed an affidavit for an attachment, charging that the debt was fraudulently contracted; that the defendants are about to dispose of, and that P. had disposed of a part of, his property in fraud of his creditors. Summonses and orders of attachments were issued against both defendants; against P. to the sheriff of Fairfield county, and against S. to the sheriff of Montgomery county. Both summonses were returned served, and P.'s stock of goods was attached under the former, and property of S. under the latter, order. Afterwards, upon petition of plaintiffs, the cause was removed to this court. Upon motions to dismiss the attachments—

*Held,* (1) that under sections 5031 and 5038, Ohio Rev. St., the action was properly brought in Fairfield county, and S. was rightly summoned in Montgomery county.

(2) That the order of attachment did not require the allowance of a judge, as required by section 5565, Ohio Rev. St., when the action is brought before the claim is due.

(3) That the sheriff could levy the order of attachment upon the goods already in his hands, by virtue of a levy under a prior execution.

*Locke* v. *Butler,* 19 Ohio St. 587, *distinguished.*

(4) That upon a motion to dismiss an attachment, upon *ex parte* testimony, the court will not decide whether the evidence preponderates for or against the truth of the charges upon which the attachment is founded, where those charges constitute the very matter upon which the action is based,—the sole issue between the parties,—and which the plaintiffs are entitled ultimately to have submitted to a jury. But the court will consider such testimony, to ascer-

*Reported by J. C. Harper, Esq., of the Cincinnati bar.

tain whether the proceeding has been taken in good faith, and whether there is respectable evidence, which, if believed, would warrant a jury in finding a verdict for the plaintiffs. In this case there is such evidence, and the plaintiffs are entitled to have the sole issue between the parties decided by a jury.

2. EQUITY—IN AID OF ATTACHMENT—FRAUD—INJUNCTION—STAYING PROCEEDINGS IN STATE COURTS—AFTER REMOVAL FROM STATE TO FEDERAL COURT—SECTIONS 640 AND 720, REV. ST., CONSTRUED—REMEDY AT LAW—PRACTICE.

On the same day on which the foregoing action at law was begun, the plaintiffs filed in the same court a petition against the same defendants, praying for an injunction and other equitable relief. The petition reiterated the allegations made in the action at law, and set out additional circumstances of the alleged fraud, and charged that S. was about to sell P.'s entire stock of goods to satisfy his levy, and that it was not more than sufficient to do so; that P. was insolvent and had no other means of payment. It also set out the bringing of the action at law, and levy of an attachment upon the same stock of goods; but that the same will be of no avail, unless S.'s levy be postoned, as in equity it ought, to complainant's attachment. The plaintiffs, therefore, pray that the levy of S. may be declared fraudulent and void as against them, and be postponed to their attachment, and that S. be enjoined from making any sale under his levy; for a receiver to sell said property, and bring the proceeds into court; and for general relief. A restraining order was granted by a judge of the Fairfield common pleas, as prayed for. S. filed his motion to dissolve the injunction; and thereafter, on petition of plaintiffs, the cause was removed to this court. On the motion to dissolve the injunction—

*Held*, (1) that, by section 640, Rev. St., (act of March 3, 1875, c. 137, § 4; 18 St. 471,) an injunction granted by a state court before the cause was removed to this court, is continued in force until otherwise ordered by this court; and the question of dissolving or continuing the injunction is not affected by the prohibition contained in section 720, Rev. St., but is to be disposed of by this court, upon its merits, precisely as it ought to have been disposed of by the state tribunals if the cause had not been removed. The prohibition of section 720 is confined to cases where the jurisdiction of the courts of the United States is originally invoked for the very purpose of staying proceedings in the state courts.

(2) The complainants have no adequate and complete remedy at law, and the case is a proper one for equitable interference by injunction.

(3) That if it be true that, by the fraudulent misrepresentations alleged, the complainants were induced to sell to P. upon credit, then the arrangement between S. and P.,—by which the former procured $25,000 of notes falling due at short intervals, with warrant of attorney attached, authorizing judgments by confession, and the subsequent entry of judgments, and issue and levy of executions thereon, seizing and selling the stock of goods, a large part of which consisted of merchandise sold by the complainants to P.,—is undoubtedly an injurious fraud upon the complainants, for which they are entitled to redress, or, so far not as consummated, to prevent; and reasonable grounds being shown in the affidavits, the determination of the truth or falsity of these charges must be postponed until the final hearing.

## In Equity.

*Tenneys, Flowers & Cratty*, of Chicago, and *Hoadly, Johnson & Colston*, of Cincinnati, for plaintiffs.

*Gunckel & Rowe*, of Dayton, Ohio, for defendants.

MATTHEWS, Justice. On November 27, 1880, the plaintiffs filed in the court of common pleas for Fairfield county, Ohio, a petition in a civil action, under the Code of Civil Procedure in that state, for the recovery of money only.

It alleged, in substance, that the plaintiffs are citizens of the state of Massachusetts, and partners in trade; that the defendants are citizens of Ohio; that on October 20, 1879, the defendants applied to the plaintiffs to grant a line of credit to the defendant Pierce, who was without means or responsibility, but familiar with the dry goods business, to sell him dry goods such as he might desire, to establish and conduct a retail dry goods store at Lancaster, in Fairfield county, Ohio; that, as an inducement thereto, the defendants represented and stated that the defendant Sharpe owned a large and magnificent farm of 720 acres of land three and a half miles from Hartford City, in Blackford county, Indiana; that the same was in a high state of cultivation, and one of the best farms in the county; that the defendant Sharpe had, within the few years that he had owned it, expended $9,000 in permanent improvements on it; that it was worth $25,000 and upwards, and would be fine security for $15,000, and the defendant Sharpe proposed to plaintiffs that he would convey said farm to the defendant Pierce in fee and allow him to execute to plaintiffs a mortgage thereon for $15,000 as security for a line of credit to that amount with plaintiffs, stating that he had not sold and would not sell said farm to Pierce at any price, but would loan it to him as a basis of credit to help him into business, and that he (said Sharpe) would never claim anything from said Pierce in respect to said farm as long as he (said Pierce) desired to hold it; that thereupon the plaintiffs, relying upon said statements and representations of the defendants, and believing them to be true, agreed to extend to defendant Pierce the line of credit aforesaid upon said land being conveyed to him as aforesaid, and upon his mortgaging the same to the plaintiffs, and the same was accordingly done on the same day, October 20, 1879, and the plaintiffs thereupon, in pursuance of said scheme, sold and delivered to said Pierce goods at the dates and of the value therein stated, viz.: from October 27, 1879, to November 3, 1880, amounting in all to $30,902.50, on account of which they acknowledge to have received payments from Pierce for which he is entitled to credit amounting to $12,449.47, leaving an unpaid balance of $20,455.03, for which Pierce is indebted to them; that the representations and statements so made by the defendants were false

v.8,no.1—2

and fraudulent when made, and well known by each of them to be so false and fraudulent, and that they were made with intent to deceive and cheat the plaintiffs out of the value of all goods which they might sell the defendant Pierce, less the net value of the farm aforesaid; that, in truth and fact, said farm was then chiefly a marsh, little better than a frog pond, being for a large part of the year under water; that there was very little of it under cultivation, and very little of it capable of cultivation, and that it is one of the poorest farms in the county; that it lies six miles by road from Hartford City; that said Sharpe had not in fact spent over $1,500 in improvements on it, and that principally in constructing a ditch, which is wholly inadequate and almost useless in draining said farm; that it was then worth, and is not now and never was worth more than $7,000, and is not good security for more than $5,000, all which the defendants then well knew, but concealed from the plaintiffs and falsely represented as aforesaid; that in fact Sharpe had, on October 1, 1879, already made a fictitious sale of said farm to Pierce for $25,000, for which Pierce had agreed to give Sharpe his judgment notes, payable within one year, at 8 per cent. interest, whenever Sharpe should ask for them, all which was fraudulently concealed from the plaintiff; that as soon as said Pierce had executed to the plaintiffs his mortgage for $15,000, on October 20, 1879, he also immediately executed and delivered to Sharpe five judgment notes for $5,000 each, due respectively in three, six, seven, eight, and nine months, with 8 per cent. interest, as he had previously agreed, all which was fraudulently concealed from plaintiffs and not known to them until said Sharpe, on November 15, 1880, caused five judgments to be entered upon said notes by confession in the superior court of Montgomery county, and executions aggregating about $27,000 to be levied upon the stock of goods of Pierce at Lancaster, Ohio; that said stock is not in value exceeding the amount of said executions, and the chief portions thereof consist of goods bought by said Pierce of the plaintiffs under the false representations aforesaid; that as soon as they learned of the fraud aforesaid, viz., on November 24, 1880, they notified the defendant Pierce that the contract of sale and credit in respect to said goods was rescinded, tendered to him the note and mortgage on said farm for cancellation, and offered to cancel and discharge the same, and demanded the return of said goods so sold, or payment for the same, which was refused. Wherefore, they demand damages for said deceit in the sum of $20,455.03, with interest, and for all other proper relief.

This petition was duly verified by the oath of one of the plaintiffs,

who also filed his affidavit for an order of attachment, setting out in substance the allegations of the petition, and stating that "the said defendants fraudulently and criminally contracted the debt, and fraudulently and criminally incurred the obligation, for which the said action has been brought;" and also that "the said defendants are about to dispose of the property of the said defendant George W. Pierce, with the intent to defraud the creditors of him, the said George W. Pierce;" and also "that the said George W. Pierce has disposed of a part of his property with intent to defraud his creditors."

Writs of summons were issued,—one against Pierce, directed to the sheriff of Fairfield county; the other against Sharpe, to the sheriff of Montgomery county,—and both were returned served.

Orders of attachment were also issued,—one against each defendant. That against Sharpe was issued to the sheriff of Montgomery county; was levied by him upon personal property of Sharpe, valued at $20,505.63, which was released to him on the execution and delivery of a forthcoming bond. The order of attachment against Pierce was directed to the sheriff of Fairfield county, and was by him levied upon goods and personal property of Pierce, which were already in his hands, under executions levied thereon upon the judgments entered against him by confession in the superior court of Montgomery county, in favor of his co-defendant, Sharpe.

On December 14, 1880, the plaintiffs filed their petition for a removal of said cause to this court, and tendered a bond, conditioned as required by law, which petition was granted, and the cause removed and certified into this court accordingly.

On November 27, 1880, the same day on which the civil action at law was begun, as above recited, the plaintiffs filed in the same court of common pleas for Fairfield county, Ohio, a petition against the same defendants in a suit praying for an injunction and equitable relief.

This petition recites, in substance, the allegations in that in the action at law, setting out in addition that the defendant Sharpe had for many years been a retail dealer in dry goods at Dayton, Ohio, and elsewhere, and that the defendant Pierce had been in his employment as managing clerk, and that they had sustained relations of the closest confidence, intimacy, and friendship; that Pierce was entirely irresponsible, and known to be so by Sharpe; that on October 1, 1879, they entered into a collusive agreement for the sale by Sharpe to Pierce of the Blackford county farm for $25,000, which it is alleged was worth not more than $5,000 cash, which agreement was in writ-

ing, and a copy of which is exhibited with the petition. This agreement provides for the sale of the farm at $25,000—

"The said Pierce issuing for the payment of same notes falling due within one year, at intervals, at such time as the said Sharpe may prescribe—the said Pierce to pay 8 per cent. interest annually; and the said Sharpe further agrees to not push the payment of said notes at any time unless the said George W. Pierce at any time should be sued; or if at any time suits should be threatened against the said Pierce, then the said Sharpe will be free to act in any manner he may choose for the recovery of his notes or money. The said Pierce agrees to give the said Sharpe judgment notes authorizing any attorney at law to confess judgment in favor of the said Sharpe, whenever the said Sharpe deems it his interest so to do."

It is alleged in this petition that, for the purpose of evading the provision in this agreement providing that Sharpe would not push the payment of said notes unless Pierce should be sued, Sharpe caused and procured the firm of H. B. Claflin & Co., of New York, to whom he was largely indebted, to sue Pierce upon a claim for $1,100, which would not become due for nearly three months thereafter, and then Sharpe caused judgment to be entered by confession against Pierce on said notes, and executions to issue thereon, and to be levied upon the entire stock of goods of said Pierce at Lancaster, which he is about to sell for the satisfaction of the same, being not more than enough therefor, and the said Pierce being insolvent and having no other property or means of payment. The petition then sets out the bringing of the action at law for the recovery of damages for the deceit, and the issue and levy on the same stock of goods; of the order of attachment against Pierce, but that the same will be of no avail unless Sharpe's levy should be postponed, as in equity and good conscience it ought, to the levy by complainants of their order of attachment. The plaintiffs therefore pray that the claim of Sharpe against Pierce, and the levy of the executions on said judgments upon said stock of goods, be adjudged fraudulent and void as against the plaintiffs, and be postponed in payment to the attachment of the plaintiffs, and that the defendant Sharpe be enjoined from making any sale of said property under said executions, and praying for a receiver to sell said property and bring the proceeds into court to abide the judgment in the cause, and praying also for general relief.

On the day of filing this petition a restraining order was granted by a judge of the court of common pleas, as prayed for, and the summons and restraining order were served upon the defendants, as in the other case in Montgomery and Fairfield counties, respectively.

On December 8, 1880, Augustus Sharpe filed in this suit his mo-

tion, in writing, to vacate and dissolve the injunction and restraining order theretofore allowed for reasons specified therein. On December 16, 1880, this cause also, on petition of plaintiffs, was removed into this court.

A motion on the part of the plaintiffs for the appointment of a receiver to take possession of and sell the goods of Pierce levied on, was heard by Hon. John Baxter, circuit judge, on January 29, 1881, and was denied; whereupon, by consent of counsel, (the defendant Sharpe not thereby entering his appearance therein, but reserving all rights to object to the jurisdiction of this court,) it was further ordered that the restraining order theretofore allowed be so far modified as to permit the sheriff of Fairfield county to sell the goods held by him upon executions in favor of Sharpe against Pierce, but the proceeds of the sale to be held and retained in his possession until the further order of the court in the premises. In pursuance of this agreement, as the sheriff reports, the goods were sold, February 28, 1881, to Augustus Sharpe, for $20,000.

On June 9, 1881, the defendant Sharpe, for reasons annexed, moved to dismiss the attachment against him and his property, and also the attachment against Pierce, so far as it interferes with his executions; and on the same day Pierce also moved to dismiss the attachment against him.

The motions of the defendants, in both cases, to dismiss the attachments and to dissolve the injunction, have now been argued and submitted for decision.

1. As to the orders of attachment, several grounds for the motions are relied on, which I will consider in their order.

(1) It is objected as to the defendant Sharpe that he was not properly served with process in the case, and that as to him there is no jurisdiction. The objection is that, being a resident in Montgomery county, he could not be sued in Fairfield county. Section 5031 of the Revised Statutes of Ohio requires, except in specified cases, that civil actions must be brought in the county in which a defendant resides, or may be summoned, and section 5038 provides that when the action is rightly brought under that former section a summons may be issued to any other county, against one or more of the defendants, at the plaintiff's request. This is what was done in the present instance. If it should turn out finally that Pierce is not liable, then there can be no recovery against Sharpe. *Dunn* v. *Hag-lett,* 4 Ohio St. 435. Unless the action is founded upon a joint liability, it cannot be maintained against Sharpe; if it is, he has been rightly

summoned. The petition charges him jointly with his co-defendant, and nothing appears upon the pleadings inconsistent with such a claim.

It is not relevant to say that he was not a joint debtor with Pierce for the price of the goods, on the contract of sale; for the action is not brought to recover on that contract. It is an action for damages on account of an alleged deceit, the wrong complained of being laid as committed by the defendants jointly. This objection is over-ruled.

(2) The next proceeds upon the same misconception. It is that the order of attachment was improperly issued, without the allowance of a judge, as required by section 5565 of the Revised Statutes, the action having been brought before the claim was due. But the claim sued on was not for the price of the goods upon the contract of sale, but for damages occasioned by the alleged deceit.

(3) It is further urged, as a fatal objection to the order of attachment, that a levy under it cannot be made upon goods already in the hands of the officer by virtue of a levy of an execution. This applies only in Pierce's case, and does not go to the regularity and validity of the order of attachment, but only to that of its service by levy upon the goods previously taken in execution by the sheriff.

But there does not appear to be any reason in the nature of the case, nor any statutory provision, which prevents the sheriff from levying an order of attachment, properly directed to him, upon goods already in his hands by virtue of a levy under a prior execution. There is no more difficulty in this case than in the levy of two or more executions of different dates, or of several successive orders of attachment, against the same debtor upon the same property. The case of *Lake* v. *Butler*, 19 Ohio St. 587, referred to in argument, was the case of an attempted levy by one officer of an order of attachment upon property in the custody of another officer under other process, where it was held that the levy of the attachment could only be made by regular garnishment.

(4) The motion is further founded on the ground that the charge of misrepresentation and deceit is untrue. A large amount of testimony upon the merits, in the shape of affidavits, *pro* and *con*, has been taken. To dismiss the attachment on this ground involves a decision based upon *ex parte* testimony of the very matter which must ultimately be passed upon by a jury. If the plaintiffs shall eventually succeed in obtaining a favorable verdict, that will determine also that they were entitled to the provisional remedy by virtue

of the order of attachment now sought to be dismissed, and of the liens, securities, and fruits they may be able to obtain by its levy. The plaintiffs cannot succeed finally in the action, except upon proof of the misrepresentation and deceit which is the basis of their complaint, the existence of which is affirmed and denied by the parties and witnesses on this motion.

I have not read the affidavits, therefore, for the purpose of determining on which side of this controversy the evidence preponderates, but rather of satisfying myself whether the proceeding now questioned has been taken in good faith, and whether there is respectable evidence, which, if believed, would warrant a jury in finding a verdict in favor of the plaintiffs. The result of my consideration is that the plaintiffs are entitled to have the question which forms the sole issue between the parties decided by a jury, and that for that reason I decline to prejudge it by granting this motion. To grant the motion on this ground is, so far as the influence of such an opinion might extend, to decide the case finally against them. To refuse to interfere now is to allow the case to be finally disposed of by the tribunal whose peculiar province it is to settle disputed questions of fact, without prejudice from any action on this motion.

The affidavits on which the orders of attachment were issued seem to be in all respects in conformity with the requirements of the statute, and the motions to dismiss them are accordingly overruled.

2. *As to the injunction.*

(1) It is claimed that the granting of the motion to dissolve is imperatively required by section 720, Rev. St., which enacts that—

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

This is the same provision originally contained in section 5, c. 22, act of March 2, 1793; 1 St. 334. It has been held to prohibit the issue of an injunction by a court of the United States to restrain the sale of property under an execution issued out of a state court, although the application is made by a third party whose property is taken. *Watson* v. *Bendurant,* 30 La. An. 1; *Daly* v. *Sheriff,* 1 Woods, 175. *Per contra, Cropper* v. *Coburn,* 2 Curt. 465.

And in the early case of *Diggs* v. *Wolcott,* 4 Cranch, 179, it was decided that although a suit to enjoin proceedings in a state court is removed from the state court into the circuit court, yet the latter cannot grant the relief prayed for. And in that case the removal

was effected by the defendants to the bill in chancery, against whom the relief was asked.

But by section 646, Rev. St., it is now provided that—

"Any injunction granted before the removal of the cause *against the defendant applying for its removal* shall continue in force until modified or dissolved by the United States court into which the cause is removed."

And by section 646, Rev. St., (act of March 3, 1875, c. 137, § 4, 18 St. 571,) it is provided, in reference to all cases removed from a state court, that—

"All injunctions, orders, and other proceedings had in such suit prior to its removal shall remain in full force and effect until dissolved or modified by the court to which such suit shall be removed."

It is clear, then, that by virtue of this last-mentioned provision the injunction in the present case is continued in force until otherwise ordered by this court, and does not cease to operate by the peremptory effect of the prohibition contained in section 720. And the inference from sections 640 and 646 is equally cogent to my mind, that in the cases provided for it is the intention of the law to authorize and require that the question of dissolving, continuing, or perpetuating the injunction originally granted by the state court, shall be dealt with by the courts of the United States, into which the cause shall have been lawfully removed, without in anywise being affected by section 720, and that it shall be disposed of by the courts upon its merits, precisely as it ought to have been disposed of by the state tribunals if the cause had not been removed. This construction of these several provisions of the law is necessary, that they may each have some effect, and restrains the interpretation of section 720 to cases where the jurisdiction of the courts of the United States is originally invoked for the very purpose of staying proceedings in state courts.

(2) The question, then, seems, whether this injunction ought originally to have been granted, and whether it ought now, upon general principles of equity jurisprudence, to be permitted to stand. Upon this point it is urged by counsel, in support of the motion to dissolve, that it is not a case for equitable interference, for the reason that the party has a complete and adequate remedy at law.

It seems, in the present condition of the case, hardly necessary to enter upon the discussion of that question. The whole scope of the injunction, as originally prayed for and allowed, was simply to restrain the sale of the stock of goods held by the sheriff of Fairfield county, under the execution of Sharpe and the complainants' order

of attachment, until the validity and priority of the former, brought into question by the allegations of the bill, could be determined on final hearing. By consent of parties the injunction was modified, after the removal of the cause into this court, so far as to permit the sheriff of Fairfield county to sell the goods held by him under said levies, with the proviso that the sheriff should hold and retain the proceeds of such sale in his possession until the further order of this court.

It is true that this consent was given by Sharpe with the qualification that he did not thereby enter his appearance in the suit, and reserving all rights to object to the jurisdiction; but that could only have reference to the question of jurisdiction over his person, which we have already decided. What is left is simply a question as to the appropriation of the fund in the hands of the sheriff. The injunction granted by the court has spent its force, and there is no longer a question as to staying by injunction proceedings in the state court. The parties themselves have agreed that the fund shall remain in its present custody, to abide the order of this court.

It is nevertheless still true that if the complainants have no equity to detain the fund for final disposition, the order should now be made authorizing the sheriff to pay it to Sharpe; and in this view it is material to determine whether such an equity exists.

So far as the objection now under consideration is concerned, that there is open to the complainants an adequate remedy at law, the case of *Wood* v. *Stanberry,* 25 Ohio St. 150, seems conclusive. It was there adjudged that "where a sheriff has in his possession goods and chattels by virtue of a levy under an execution issued upon a *void* judgment, and afterwards levies, subject to his former levy, an order of attachment in favor of the creditors of the judgment debtor upon the same property and proceeds, or threatens to proceed, under the direction of the plaintiff in execution, to sell the same for the purpose of applying the proceeds upon the execution, the plaintiffs in attachment may restrain the sale by injunction."

In meeting the objection urged here the court say, p. 150:

"The remedy which an injunction affords them is complete, and no other process or proceeding is adequate to the preservation of their rights, or their just compensation for injuries, if the sale under the execution is permitted. They cannot appear in the case of *Stanberry* v. *Purviance* and ask the court to recall the execution, for the reason that they are not parties therein; and for the same reason they cannot, upon the return of the execution, ask the court to control the proceeds of the sale for their benefit; nor can they, by proceedings in error, stay the execution or reverse the judgment upon which it was

issued. They cannot recover the possession of the property attached from the sheriff—the possession is rightfully in him—nor can they maintain trespass against him, for the reason that the execution, being regular on its face, is his justification. If the property be sold under the execution and delivered to purchasers, an order of sale under their attachment will be fruitless; an action against the purchaser, if insolvent, will afford no redress, and if solvent will impose burdens and expenses upon them for which no compensation can be made. In short, there is no adequate remedy, and therefore the case is a proper one for an injunction."

It is true, in that case the execution was declared to be *void*, while here it is only *voidable*. But that only furnishes an additional ground for independent equitable interference, as the equity asserted by the complainants, while it is sufficient, if maintained, to avoid the levy of the execution as against their claim, could not be established and vindicated in any other mode than by a bill in chancery. The grounds, therefore, for maintaining the injunction in the present case are stronger than in the case just cited.

In the case of *Watson* v. *Sutherland*, 5 Wall. 74, the supreme court of the United States, speaking by Mr. Justice Davis, sustained an injunction to prevent a sale under an execution of goods levied on as the property of the judgment debtor, at the suit of a third person claiming title to them by virtue of a prior purchase from the judgment debtor, which sale the plaintiff in the execution charged to be fraudulent and void, the court deciding the question of fraud in favor of the complainant in equity, holding that the recovery of damages in an action at law was not an adequate remedy for the loss arising from the destruction of his business. It does not appear in the report of that case whether an action of replevin for the recovery of the possession of the goods themselves would lie. But in either view the rule laid down is certainly broad enough to cover the present case.

(3) This brings us to a consideration of the complainant's equity, which is denied. Its existence depends entirely upon whether, upon final hearing, he will be able to establish by proof the fraud of which he complains. If it be true that, by the fraudulent misrepresentations alleged, the complainants were induced to sell to Pierce goods on credit, then the arrangement between Sharpe and Pierce—by which the former procured $25,000 of notes falling due at short intervals, with warrant of attorney attached, authorizing judgments by confession, and the subsequent entry of judgments, and issue and levy of executions thereon, seizing and selling the stock of goods, a large part of which consisted of merchandise sold by the complain-

ants to Pierce—is undoubtedly an injurious fraud upon the complainants, for which they are entitled to redress, or, so far as not consummated, to prevent. Permitting the proceeds of the sale of the goods to be paid to Sharpe on his executions, is simply to permit the consummation of that fraud, if one has been contemplated.

Into the inquiry as to the merits of the two sides of that controversy, it is not appropriate to enter now. Its adjudication must be postponed until the final hearing. As I have already said, in reference to the motion to dismiss the attachments, there is in my opinion reasonable ground shown in the affidavits for permitting the controversy to proceed to final determination, without prejudice from these preliminary proceedings.

The motion to dismiss the attachments, and that to dissolve the injunction or modify the previous order of the court in respect to the fund in the hands of the sheriff, are overruled.