# PLATTE COUNTY STATE BANK v. FRANTZ ET AL*
(No. 1190; Sept. 22, 1925; 239 Pac. 531)

BANKS AND BANKING—EXCESS LOANS—EQUITY—FRAUDULENT CON-
VEYANCES—ATTACHMENT LIEN—CREDITOR'S BILL—FINDINGS—EVI-
DENCE—APPEAL AND ERROR—EXCEPTIONS.

1. Loan by state bank in excess of one-fifth of its unimpaired capital stock, contrary to Comp. St. 1920, § 5146, *held* not void, and hence loan might be enforced in equity.

2. It is the peculiar province of a court of equity to protect liens.

3. Rule that creditor must first recover judgment before he may bring action to set a fraudulent conveyance aside is one of procedure merely, and does not affect the right.

4. An attachment under Comp. St. 1920, § 6134, creates a lien.

5. Creditor, who secured an attachment lien on property claimed to have been fraudulently conveyed, might sue to set such conveyance aside without waiting until judgment was obtained, execution issued, and returned nulla bona, though no decree setting such conveyance aside can be entered until indebtedness is definitely established by judgment.

6. In suit in nature of creditors' bill to set aside transfers of real estate by judgment debtor with creditor seeking an attachment lien on property claimed to have been fraudulently conveyed, neither right of creditor to bring the bill, nor authority for entering a decree, was defeated because judgment did not contain a recital preserving the attachment lien, where lien appeared to have been regularly obtained, and it being preserved by rendition of judgment for plaintiff.

7. In suit in nature of creditors' bill to set aside transfers of real property by judgment debtor, it was no defense that it was not shown that judgment was not paid, since its nonpayment would be presumed until contrary appeared.

8. In suit in nature of creditors' bill to set aside transfers of real property by judgment debtor claimed to be in payment of past indebtedness, evidence *held* to warrant finding that conveyances were voluntary and made with intent by grantor to defraud plaintiff and to require grantee to show bona fide existence of indebtedness claimed.

9. In suit in nature of creditors' bill to set aside transfers of real property by judgment debtor, grantee *held* not to have established indebtedness owing from judgment debtor by clear and unequivocal evidence.

10. In suit in nature of creditors' bill to set aside transfers of real property by judgment debtor, that grantee was not connected with judgment debtor's fraud *held* immaterial if conveyances to her were in fact voluntary.

11. In suit to set aside transfers of property by judgment debtor, judgment *held* properly admitted to show existence of indebtedness at time of trial.

12. In suit to set aside judgment debtor's transfers of real property with plaintiff seeking an attachment lien on property claimed to have been fraudulently conveyed, pleadings and attachment papers *held* admissible to show that plaintiff obtained a lien, and that an action to obtain it had been commenced.

13. In suit to set aside judgment debtor's transfers of real property, question asked witness whether there was any design or conspiracy to defraud plaintiff *held* not prejudicial, where it was answered, though an objection to a similar question had been previously sustained.

14. Reviewing tribunal cannot review lower court's ruling on admission of testimony, where no exception was taken.

15. In suit to set aside judgment debtor's transfer of real property, evidence that judgment debtor had stated that he did not owe grantee anything was admissible as tending to shed light on intent with which subsequent conveyance was made by him.

16. In suit to set aside judgment debtor's transfers of real property, testimony that land claimed by grantee was, at time of its transfer to another, worth only about $65 per acre, *held* admissible, where grantee claimed because of such transfer that judgment debtor owed her amount largely in excess of value of $65 per acre of such land, since it had bearing on bona fides of existence of indebtedness between judgment debtor and grantee.

*See Headnotes (1) 7 C. J. p. 713; (2) 21 C. J. p. 119; (3) 15 C. J. p. 1390, 27 C. J. p. 727; (4) 6 C. J. p. 242; (5) 27 C. J. pp. 733; 734 (6) 27 C. J. p. 738 (Anno) (7) 27 C. J. p. 796 (Anno); (8) 27 C. J. pp. 830, 834; (9) 27 C. J. p. 830; (10) 27 C. J. p. 509; (11) 27 C. J. p. 811; (12) 27 C. J. pp. 810, 811 (Anno); (13) 4 C. J. p. 964; (14) 3 C. J. p. 912; (15) 27 C. J. p. 812; (16) 27 C. J. pp. 813, 814.

Appeal from District Court, Platte County; Volney J. Tidball, Judge.

Action by the Platte County State Bank against Thomas U. Frantz and others, in the nature of a creditor's bill. Decree was rendered in favor of plaintiff from which defendants appeal.

*M. A. Kline, O. O. Natwick* and *H. J. Ferguson* for appellants.

The petition did not state a cause of action; Ackerman v. Middleby (N. H.) 78 Atl. 615; Stonebreaker v. Littleton (Me.) 86 Atl. 150; Bank v. School Dist. (Okla.) 162 Pac. 809; Phelps v. Palmer, 81 Mass. 499; Mariana R. R. Co. v. Maurel (Fla.) 56 So. 670; Wadley, Jones & Co. v. Jones, 55 Ga. 176; a party must reduce his claim to a judgment before he can maintain a creditor's bill; Jenks v. Horton (Mich.) 72 N. W. 20; Baxter v. Moses (Me.) 1 Atl. 350; Gilbert v. Stockman (Wis.) 51 N. W. 1076; Ladd v. Judson (Ill.) 51 N. E. 838; Trotter v. Lisman (N. Y.) 92 N. E. 1052; Jones v. Green, 17 L. ed. 553; Moyer v. Riggs, (Kans.) 55 Pac. 495; Fein v. Fein, 3 Wyo. 163; plaintiff must first exhaust his legal remedies; a mere attachment lien is insufficient to support the creditor's bill; Tennant v. Beatty, 18 Kans. 324; Clark v. Raymond (Ia.) 50 N. W. 1068; Whitney v. Davis (N. Y.) 42 N. E. 661; Artman-Co. v. Giles, (Pa.) 26 Atl. 668; Lyden v. Co. (Cal.) 100 Pac. 236; Talbott v. Randall (N. Mex.) 5 Pac. 533; Mills v. Ledwidge (Ill.) 44 N. E. 751; McMinn v. Whelan, 27 Cal. 300; Dodge v. Co., 69 Ga. 665; Weil v. Lankins, 3 Nebr. 384; Martin v. Michael, 23 Mo. 50; Melville v. Brown (N. J.) 1 Harris 367; Bigelow v. Andress, 31 Ill. 322; Morton v. Grafflin (Md.) 13 Atl. 341; Weinland v. Cochran (Nebr.) 4 N. W. 67; Hart v. Clarke (N. Y.) 87 N. E. 808; a judgment must be obtained; 6056 C. S.; Moyer v. Riggs, 55 Pac. 495; plaintiff's claim was an excess loan and unlawful 5146 C. S.; 21 C. J. 191; Kahn v. Walton (O) 20 N. E. 203; Unckles v. Colgate (N. Y.) 43 N. E. 61; Teoli v. Nardolillo

(R. I.) 49 Atl. 489; Downey v. Co. (Mass.) 87 N. E. 597; Greer v. Payne (Kan.) 46 Pac. 193; Nester v. Co. (Pa.) 29 Atl. 102; plaintiff's acts being illegal a Court of Equity will not grant relief; Miller v. Ammon, 145 U. S. 421; McMullen v. Hoffman, 174 U. S. 639; Connolly v. Co., 184 U. S. 548; Gunter v. Lecky, 30 Ala. 591; Wald v. Wheelon (N. Dak.) 147 N. W. 402; Roby v. West, 4 N. H. 285; Pike v. King, 16 Ia. 49; West. Un. Co. v. Yopst (Ind.) 20 N. E. 222; Jemison v. R. Co., 125 Ala. 378; Martin v. Hodge, 47 Ark. 378; Howell v. Fountain, 3 Ga. 176; Phalen v. Clark, 19 Conn. 421; Gregg v. Wyman, 4 Cush. 322; Fowler v. Scully, 72 Pa. 456; Fitzgerald v. R. R. Co., 63 Vt. 169; DeWitt, v. Lander, 72 Wis. 120; Buck v. Albee, 26 Vt. 184; Keith v. Fountain (Tex.) 22 S. W. 191; nor could plaintiff recover at law; Beecher v. Co. (Ind.) 97 N. E. 23; Van Meter v. Spurrier, 94 Ky. 22; Allen v. Pearce, 84 Ga. 606; Hill v. Ward (Ind.) 91 N. E. 38; Williams v. Turnbull (Okla.) 162 Pac. 770; Ewert v. Bluejacket (U. S.) 66 L. ed. 489; Waskey v. Hammer, 223 U. S. 85; Harris v. Runnels, 12 How. 79; Pullman Car Co. v. Co., 171 U. S. 151; the burden of proving fraud was upon plaintiff; Am. Co. v. Hall (Ill.) 70 N. E. 581; Johnson v. Abbott, 25 Wyo. 133; Ball v. Danton (Ore.) 129 Pac. 1032; Kerns v. Co. (Idaho) 135 Pac. 70; Parkinson Bros. Co. v. Figel (Cal.) 142 Pac. 135; Grisier v. Farmers Bank (Kan.) 169 Pac. 215; Vogt. v. Co. (Ore.) 172 Pac. 123; Rohrer v. Snyder (Wash.) 69 Pac. 748; Larch v. Holz (Ind.) 101 N. E. 127; Bank v. Barber (Ill.) 122 N. E. 533; a debtor may prefer one creditor to another; Johnson v. Abbott, supra; the evidence of fraud must be clear; Power Co. v. Pederson, 184 Pac. 317; the court erred in admitting the record of another suit.

*J. E. Jacobson* and *Kinkead, Ellery & Henderson* for respondent.

The conveyances were a fraud upon the bank; 12 R. C. L. 475; an attachment lien will support a creditors bill;

12 R. C. L. 629; Quarl v. Abbott, (Ind.) 1 N. E. 476; Tappan v. Evans, 11 N. H. 327; Robert v. Hodges, 16 N..J. E. 304; Henham v. Hamm (Wash.) 31 Pac. 459; Simonton v. Simonton, (Ida.) 193 Pac. 387; Koopman v. Mansolf (Mont.) 149 Pac. 494; Grunsfield Bros. v. Brownell, (N.M.) 76 Pac. 310; Bank v. France (N.D.) 177 N.W. 375; Hahn v. Salmon (Ore.) 20 Fed. 801; Dawson v. Sims (Ore.) 13 Pac. 506; recovery of judgment is no longer indispensable; 2 Pom. Eq. Rem. 1430; it is true that the authorities are not unanimous in supporting bills resting upon attachments; Iron Co. v. Goodale, 39 N. H. 223; Bank v. Ankum, (Mo.) 177 S. W. 778; Kantz v. Sheridan (Me.) 105 Atl. 401; F. S. Ass'n. v. Rees (S. D.) 171 N. W. 812; Vail v. Hammond (Conn.) 22 Atl. 954; Bank v. Harris, 84 N. C. 206; Miller v. Hughes (S. C.) 12 S. E. 419; Shirley v. Waco (Texas) 10 S. W. 543; Co. v. Auto (N. J.) 54 Atl. 425; Abramson v. Horner (Md.) 80 Atl. 907; Cogburn v. Pollack, 54 Miss. 639; Bennett v. Minott, (Ore.) 39 Pac. 997; plaintiff's action is for the purpose of impressing certain real estate with a trust and is not governed solely by the rule applicable to a creditor's bill; 223 L. R. A. (N. S.) 104; and note; Chautauque v. White, 57 Am. Dec. 442; Case v. Co., 101 U. S. 688; 15 C. J. 1388; Williams v. Co., 227 Fed. 372; the old rule requiring a judgment as a prerequisite to an action for the vacation of a fraudulent conveyance, was procedural and has been abolished by the code; Bank v. McDonough (Ariz.) 168 Pac. 635; 6056 C. S. is not applicable; 6 C. J. 205; Westevelt v. Hagge (Nebr.) 85 N. W. 853; that the claim represents an excess loan is not available as a defense; Minn Threshing Co. v. Jones (Minn.) 103 N. W. 1017; Ia. Bank v. Bank (Nebr.) 183 N. W. 982; Thompson v. Bank, 164 U. S. 240; Bank v. Pierce (Mich.) 75 N. W. 1054; Morse on Banks & Banking Secs. 750-54; Benton Co. Bank v. Boddicker (Iowa) 75 N. W. 632; in this case the burden of showing bona fide consideration was on defendants; 12 R. C. L. 174; Carson v. Stevens (Nebr.) 112 N. W. 58; Martin v. Remington

(Wis.) 76 N. W. 615; Seitz v. Mitchell, 94 U. S. 580; Russell v. Davis (Ala.) 91 A. S. R. 56; Culver v. Graham, 3 Wyo. 211; Puple v. Toughenbaugh (Colo.) 210 Pac. 72; Goldberg v. Parker (Conn.) 87 Atl. 555; Gaar v. Hart (Ia.) 42 N. W. 452; Bank v. Hollowell (Nebr.) 88 N. W. 558; a judgment based upon conflicting evidence will not be disturbed; Stahley Co. v. Beckstead, 27 Wyo. 177.

Blume, Justice.

This is an action in the nature of a creditor's bill. A summary of the facts is as follows: In October, 1920, Thomas U. Frantz borrowed of the Platte County State Bank, hereinafter referred to as the bank, the sum of $19,000, at interest. The notes given therefor became due early in January, 1921, and the officers of the bank held a meeting with Frantz on January 12, 1921, at which, as the testimony shows, Frantz agreed to make to the bank a mortgage on the equity in his real property, in order to secure his said indebtedness. This promise was not carried out. Frantz went to Iowa and Illinois immediately after the last mentioned dates, and soon after his return and on January 24, 1921, he conveyed certain land in Platte county, Wyoming, to his sister, Dora E. Wonsor of Wheatland, Wyoming, and certain other land to F. J. Elliott, his brother-in-law, and made a mortgage to one H. J. Ferguson, his attorney, on still other lands owned by said Frantz. These conveyances disposed of all of the real estate owned by Frantz, except some South Dakota property, which was also subsequently transferred to said Ferguson. About the same time or immediately thereafter, he also gave certain chattel mortgages to secure other creditors, not including said bank, however. And by these transfers and mortgages Frantz disposed of all or substantially all of his real and personal porperty. On January 29, 1921 said bank commenced an action in the District Court of Platte county, Wyoming, to recover judgment on the notes hereinbefore mentioned. An affidavit for attachment was filed on the ground that Frantz had as-

signed, removed and disposed of his property with intent to defraud his creditors. A bond was given, a writ of attachment was issued and the real estate in Platte county transferred, as aforesaid, was levied upon by the sheriff of Platte county, Wyoming. Judgment in said action was rendered on December 14, 1921, in favor of said bank for the sum of $22,258.65—the amount then due upon said notes. The present action, in the nature of a creditor's bill, was commenced on January 31, 1921, soon after the levy of the writ of attachment aforesaid, and was brought against Thomas U. Frantz, Dora E. Wonsor, F. J. Elliott and H. J. Ferguson, as defendants. A decree was entered on February 28, 1923, setting aside the transfers of real property in Platte county, made as aforesaid to said defendants by said Frantz, declaring said attachment levy and said judgment to be a lien upon said lands superior to any right of defendants, and ordering so much of said lands to be sold as would be necessary to satisfy said judgment against Thomas U. Frantz, under an execution to be issued on said judgment. From this decree said defendants have appealed. It appears, however, that the lands transferred to Elliott and Ferguson have been sold under prior mortgages and that neither of them have now any further interest in this appeal, which is accordingly prosecuted only on behalf of said Dora E. Wonsor, who will hereafter, at times, be referred to as the appellant.

1. Counsel for appellant cite us to section 5146 of the Wyo. C. S. 1920, which provides in substance that no loan may be made by a bank to any person, firm or corporation in excess of one-fifth of the unimpaired capital stock of the bank. The capital stock of the bank in question was $20,-000, and hence by loaning $19,000 to Frantz the bank violated the provisions of the section just quoted. It is accordingly contended that the loan is void and that a court of equity should not lend its aid in enforcing it. We considered a somewhat similar question in State Bank v. Haun, 30 Wyo. 322, 337; 222 Pac. 45. In that case it appears that

section 5148 Wyo. C. S. 1920 had been violated, in that the name of the bank did not appear in the transfer of a note. It was contended that no recovery could be had thereon. We held that such consequences would be to injure the interests of creditors, stockholders and all who have an interest in the safety and prosperity of the bank, and that the statute was not intended to deprive the bank of the right to sue upon such a contract. This holding was re-affirmed in McDonald v. Mulkey, (Wyo.) 231 Pac. 662. The principle is applicable here. It is true that a few of the cases have held that a loan made in violation of the statute is void, but the great weight of modern authority is to the effect that even though the loan was not authorized, the courts would not refuse to lend their aid to the bank to compel the debtor to pay, but will punish the offending bank in some other manner. 7 C. J. 713. See also School District v. Bank, (Tex. Civ. App.) 241 S W. 608; Bank v. Nelson, 109 Nebr. 123, 183 N. W. 100; Goldstein v. Bank, 109 Tex. 555, 213 S. W. 584; Schuber v. McDuffee, 67 Okla. 160, 169 Pac. 642. In the case last cited the court held that the law prohibiting banks from loaning money to its officers, was for the protection of its stockholders and depositors, and a violation of the law in this respect can only be availed of at the instance of the state, and that such a loan between the bank and the borrower is not invalid and an amount so loaned may be recovered. In the case of Blochman Commerce & Savings Bank v. Investment Co., 177 Cal. 762, 171 Pac. 943, a case like that at bar, a number of the authorities are reviewed and the loan held valid. The court stated that there is a vital distinction between contracts based upon fraud or made in violation of laws passed for the benefit of one of the contracting parties and those made in violation of the statutes designed to aid the sovereign power in the regulation of certain kinds of business. In Waskey v. Hammer, 223 U. S. 85, 56 Law Ed. 359, the court stated that the general rule of law that an act done in violation of a statutory prohibition is void and confers no right upon the

wrong doer, is subject to the qualification that when, upon a survey of the statute its subject matter and the mischief sought to be prevented, it appears that the legislature intended otherwise, effect must be given to that intention. We do not think that it was the intention of the legislature to prevent recovery upon a loan made in violation of section 5146 Wyo. C. S. 1920. The law does not make the loan void. A bank is a quasi-public institution, conducted not alone for the benefit of its stockholders but for the benefit of a large number of depositors as well, whose interests cannot be altogether disregarded by the court. And if, as we hold, such loan may be reduced to judgment, no reason exists why all proper equitable remedies should not be available in aid of its collection.

2.    It is contended that the action herein was premature, and that it could not be brought until judgment was obtained and execution issued and returned nulla bona. We might say, without expressing an opinion, that it seems to be held that where a defendant does not demur or raise the question in some other manner, but answers on the merits, it is waived. Coffey v. McGahey, 181 Mich. 225, 148 N. W. 356, Ann. Cas. 1916 C, 923; Parkinson Bros. v. Figel, 24 Cal. App. 701, 142 Pac. 135. So far as the record herein shows, the question was not raised in the lower court, but we shall discuss it without reference thereto. The English cases expounding the common law, decided before any of the American decisions on the subject, do not shed very much light upon it. It was held in Angel v. Draper, 1 Vern 399, 23 English Reprint 543; Shirley v. Watts, 3 Atk. 200, 26 English Reprint 917; Bennett v. Musgrove, 2 Ves. 51, that a judgment creditor must take out an execution and levy upon property before he could bring such action; that a creditor at large was not entitled to do so. However, a judgment was not, as generally with us, a lien upon land, until an execution by elegit had been issued and levied. 34 C. J. 568. Hence a judgment creditor was but a creditor at large. So. too, an attachment, such as is ordinarily provided

by laws in the various states of this country, was not known to the common law. 6 C. J. 30. In fact the only form of attachment of property permitted was what is commonly known as garnishment of property in the hands of third parties. Id. Fraudulent conveyances were void under the common law and the statutes of Elizabeth on that subject were but confirmatory thereof. 27 C. J. 414. These statutes were not by their terms limited to judgment creditors or lien holders, but the English courts limited the application of these statutes to cases where a lien was specifically obtained by a creditor, and though fraud is one of the main subjects of consideration by a court of equity (Wait on Fraudulent Conveyances, sec. 56), it was not considered advisable for that court to interfere, until the creditor obtained a specific lien or claim upon the property. So much may be gathered from these decisions. The mere fact that a party was a creditor was not enough. It was necessary for him to be a creditor with a specific right in the property, and it has been stated that "this is the foundation of the jurisdiction in chancery, because jurisdiction on account of the alleged fraud of the debtor does not attach as against the immediate parties to the impugned transfer, except in aid of the legal right." Cates v. Allen, 149 U. S. 458, 13 Sup. Ct. 883, 977, 37 L. ed. 804. And it is now generally recognized that it is the peculiar province of a court of equity to protect liens. Chancellor Kent in Wiggins v. Armstrong, 2 John Ch. 145, thought that the reason for the rule that a creditor should first have a specific claim upon property was because until that time he is not concerned with frauds, and to give a general creditor, without such claim, the right to set a conveyance aside as fraudulent, would lead to "an unnecessary, and perhaps, a fruitless and oppressive interruption of the debtor's rights." The further rule adopted, and particularly until recent years held by a number of the courts in this country, that a judgment should first be obtained, not in order to have a lien, but in order that the debt be made certain, is not based, so far as

we can find, upon any early decisions declaring the common
law, since the judgment under these decisions was neces-
sary merely because it was one of the essential steps toward
securing a lien, and to put the creditor in a position differ-
ent from that of a general creditor. The rule that a creditor
must first recover judgment, before he may bring an action
to set a fraudulent conveyance aside, is in any event one of
procedure merely and does not affect the right. In Re
Beckhaus, 177 Fed. 141, 100 C. C. A. 561; Skilton v. Cod-
ington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885.
And even courts which hold that such judgment is ordinar-
ily a prequisite to such action, make an exception in case it
is impracticable or impossible to first obtain such judg-
ment, and this is notably true where the defendant who
conveyed the property is a non-resident. 15 C. J. 1390. In
Arizona, Connecticut, Idaho, Indiana, Georgia, North Caro-
lina, South Carolina and Texas, it is held that since law and
equity has been blended, the same courts administering
justice in actions at law as well as in equity, a plaintiff may
sue to recover the debt, and at the same time and in the
same suit ask that a conveyance, alleged to be fraudulent,
be set aside. See also Fidelity Sav. & L. Assn. v. Reese, 41
S. D. 546, 171 N. W. 812. In the case of C. J. L. Meyer &
Sons Co. v. Black, 4 N. M. 352, 16 Pac. 620, the court held
that a general creditor may, in a proceeding of attachment,
ask to set a conveyance aside as fraudulent, without first
reducing his demand to judgment. In Alabama, Arkansas,
Maine, Maryland, Tennessee, Virginia, West Virginia and
Ohio, statutes have been passed permitting creditors to
bring an action to set aside a fraudulent conveyance with-
out first obtaining a judgment. 27 C. J. 735. Under sec-
tion 9 of the Uniform Fraudulent Conveyance Act, adopted,
it seems, by eleven states, a creditor is permitted to bring
an action to set aside a fraudulent conveyance when his
claim has matured. In other words, no prior judgment or
execution thereon appears to be necessary before bringing
an action. Volume 9, Uniform Laws Annotated 124, 130.

Several courts hold that the procuring of a judgment and the issuance of execution thereon and its return unsatisfied is but one form of proof of the creditor's want of remedy at law; that insolvency of the debtor may be otherwise established; and that where it is shown that judgment and execution would be fruitless and involve only useless expense, a creditor may maintain a bill to reach equitable interests of his debtor without first obtaining a judgment at law. Among these courts are those of Colorado and the District of Columbia. 15 C. J. 1390. In a number of states courts have held that an action to set a conveyance aside as fraudulent may be brought by a creditor, before judgment, when he has secured a lien by attachment. This is true in Indiana, Kentucky, Mississippi, New Hampshire, New Jersey, Oregon, Texas, Washington and Wisconsin. 27 C. J. 733, Moore, Fraudulent Conveyances, 2, 782. To these must be added Montana and North Dakota. Wheeler v. Moon, 49 Montana 307, 141 Pac. 665; Bowen v. State Bank, 69 Mont. 223, 221 Pac. 527; Bank v. France, (N. D.) 117 N. W. 375. This is the rule in Missouri pursuant to statute. 27 C. J. 733, note 12. See exhaustive note 23 L. R. A. N. S. 1, on the whole subject. It is apparent from the foregoing review that the courts which would now hold that a judgment, or a judgment and execution, are essential as a basis for commencing a suit to set a fraudulent conveyance aside, are vastly in the minority, and the trend of legal opinion has distinctly been in the opposite direction, and we are confronted with the proposition whether we shall, at this late date, adopt a rule of procedure that, seemingly on good grounds, is gradually disappearing in other states. We have already seen that at common law, as interpreted by the English courts, a specific lien was essential to commence such action, for the purpose of giving a plaintiff in such case a different standing, and a better right than a general creditor. When the legislature of the various states in the country provided for liens by attachment, the courts were confronted with the proposition whether such liens sufficed

for a creditor's bill. Many, and we think the majority, declared in the affirmative. In New York such lien may apparently be used for defensive but not for offensive purposes. See cases cited in Pomeroy, Equity Jurisprudence (5th Ed.), secs. 1415, 2308. Other courts applied the reasoning of Chancellor Kent in Wiggins v. Armstrong, supra, to such a case, holding that an attachment is but a provisional lien and may never be perfected because the plaintiff may fail in his suit, and that a grantee of a fraudulent conveyance should not be disturbed until a creditor has reduced his claim to judgment. 27 C. J. 734, note 13. This theory was first advanced in 1838 in the case of Melville v. Brown, 1 Harr (16 N. J. L.) 364, where the court, however, held that an attachment created no lien. A forceful answer to this argument was made in the later New Jersey case of Hunt v. Field, 9 N. J. Eq. 36, 57 Am. Dec. 365, decided by the chancellor in 1852, wherein the court, among other things, held that under the attachment law the property was "bound" after seizure, hence the attachment created a lien, and since the law gave it, it was the duty of a court of equity to lend its aid in making it effective. In section 6134 Wyo. C. S. 1920 it is provided that "an order of attachment shall bind the property attached from the time of service," and it is now universally recognized that such attachment creates a lien. Coulson v. Galtsman, 1 Neb. Unoff. 502, 96 N. W. 349, and cases cited; Bigelow v. Andress, 31 Ill. 322, 331, and cases cited; Stone v. Anderson, 26 N. H. 506, 517; Quarl v. Abbet, 102 Ind. 233, 1 N. E. 476, 52 A. S. R. 662; Cogburn v. Pollock, 54 Miss. 639, 6 C. J. 242. We might add that many persons are sued, though the plaintiff's claim is ultimately proved to be unfounded. Such defendants are in no worse position than a grantee of a conveyance whose conduct is alleged to be fraudulent. Further, if a creditor, like that in the case at bar, must wait in bringing a creditor's bill till he recovers judgment, he might have to wait a considerable time, during which his evidence, which a suit helps him to marshall to show the fraud, might

be scattered and lost. We are inclined to the view that a creditor, entitled to and who secures an attachment lien on property claimed to have been fraudulently conveyed, may bring his action to set such conveyance aside without waiting till his indebtedness is reduced to judgment, although, of course, no decree setting such conveyance aside should be entered till the indebtedness is definitely established by judgment. First National Bank v. McDonough, 19 Ariz. 223, 168 Pac. 635. This holding is not inconsistent with Fein v. Fein, 3 Wyo. 161, 13 Pac. 79, for in that case the plaintiff in a creditor's bill had not at the time of the commencement thereof secured a lien on any property. The question whether or not an attachment lien furnishes a sufficient basis for commencing an action to set a fraudulent conveyance aside was not discussed or considered, and the statement in the opinion to the effect that it is uniformly held that a creditor should first reduce his claim to judgment before bringing such action, while doubtless the rule held by the majority of the courts at that time, was not, in view of the fact that the plaintiff in that case had not obtained a lien, necessary to the decision. Nor was the right of plaintiff to bring the creditor's bill, nor the authority for entering a decree in the suit, defeated by reason of the fact that the judgment on the notes did not contain a recital preserving the attachment lien. The lien appears to have been regularly obtained and it was preserved by the very fact that judgment was rendered for plaintiff. First National Bank v. Sorrenson, 30 Wyo. 136, 149; 217 Pac. 948, and authorities there cited. Nor do we think the objection valid that it was not shown that the judgment was not paid, for we think that its non-payment in this case should be presumed till the contrary appears. 15 C. J. 1429.

3. It is claimed that the judgment is not sustained by sufficient evidence. No good purpose would be subserved in discussing the testimony, which is voluminous, in detail, and we shall mention merely some of the salient points. Frantz, the grantor of the conveyances in question, was in failing

circumstances at the time, brought about by speculations in buying·oil stocks for an agreed price of about $52,000, and by the falling market in property, which latter, as is well known, commenced in the spring or early summer of 1920. He borrowed $19,000 from the bank in October, 1920, and was unable to meet the obligation when it became due in the early part of January, 1921. The bank was anxious to have it paid or secured, and the officers of the institution had a meeting with Frantz on January 12, 1921, at which the latter promised to secure the indebtedness by giving a mortgage on the following day on the equity which he had in his real estate. He failed to do so on the next day or the following days, but went to Iowa and Illinois, during which time he saw Elliott, his brother-in-law and intimate acquaintance, and the court, we think, was justified in finding that he also either saw Ferguson during that time, or made arrangements for Ferguson, to come to Wheatland in order to look after the transfers of property made on January 24th, soon after Frantz's return. These transfers rendered the latter hopelessly insolvent, and made, as they were, soon after Frantz had promised but failed to give the bank a mortgage, and the fact that he secured his other creditors but not the bank, warranted the court, we think, in finding that he deliberately planned to place his property in position so that it could not be reached by the bank. A suit was then pending against him wherein one McDonald was plaintiff seeking to recover $15,000, and to foreclose a mortgage given to secure that sum. Dora E. Wonsor claims that Ferguson, an attorney, came to Wheatland to protect her interests; that he was sent there by Steiger, an attorney at Toledo, Iowa, to whom she had written a letter. No such letter was produced, though it might doubtless have been found among Steiger's effects. No attempt was made to produce it. Mrs. Wonsor did not know that Ferguson was coming, and the fact of his coming just at this particular time, after the foregoing trip of Frantz, and while the latter was pressed by the bank, might well have been deemed by the court a

suspicious circumstance indicating that all of the various transactions were arranged by Frantz. Mrs. Wonsor had not, in the meantime, consulted any attorney at Wheatland or vicinity, who doubtless, on account of knowing the local situation, would have been in much better position than Ferguson to advise her. The transfers in question were written in the home of Franz, and apparently with as much secrecy as possible. Mrs. Wonsor is a sister of Frantz, on terms of intimate affection with him, living in the same house with, and keeping house for, Frantz for about three years previous to the transfers. It is not pretended that she had any money with which to pay for the property, but it is claimed that the transfers to her were made in order to pay a past indebtedness of about $15,000. Each of the deeds to Mrs. Wonsor recites that it is given for one dollar and other valuable consideration. When and after the conveyances in question were executed no visible change of possession took place. We may concede, as held in Johnson v. Abbott, 25 Wyo. 133, 165 Pac. 991, that Frantz had a right to prefer one creditor over another, and we concede further that fraud must be clearly shown, but we think that the foregoing combination of facts, together with other suspicious circumstances, warranted the trial court in finding that the bank had made out a prima facie case to the effect that the conveyances in question were voluntary and were made with intent, at least on the part of the grantor thereof, to defraud the bank, and requiring Mrs. Wonsor, in order to overcome this prima facie case, to show the bona fide existence of the indebtedness claimed. 27 C. J. 493, sec. 146; 27 C. J. 642, 791 (sec. 717) and the numerous cases there cited; 12 R. C. L. 667; Am. Dig. Fraudulent Conveyances, Sec. 277 (2); Bump Fraudulent Conveyances, (Revised Ed.) 214-222. Wait on Fraudulent Conveyances, (3rd ed.) sec. 7, states as follows:

"A natural presumption is the deduction of one fact from another. For instance: a person deeply indebted, and on the eve of bankruptcy, makes over his property to a near relative, who is known not to have the means of paying for it. From these facts a jury may infer the fact of a fraudulent intent to hinder and delay creditors. A presumption of fraud is created which the party who denies it must repel by clear evidence, or else stand convicted."

So in Welch v. Bradley, 45 Minn. 540, 48 N. W. 440, it is held that where it appears on the part of the plaintiff that an insolvent has voluntarily conveyed all his unexempt property to a member of his family without any consideration, except alleged past services, and under circumstances tending to show that the immediate inducement and motive for the transfer was to place the same beyond the reach of process, a prima facie case of fraud is made, requiring a full and satisfactory explanation on the part of the purchaser in respect to the nature of the consideration and the honesty of the transaction.

We think the case at bar comes fairly within the principle of these authorities, though not all of the property was conveyed to Mrs. Wonsor, inasmuch as all of the transfers were made practically at the same time and as one transaction, and doubtless upon the advice of the same man. We cannot say that she has overcome the prima facie case made by the bank. She claims that she loaned Frantz some $600 prior to 1908; that about 1906 she owned a one-half interest in a feed business in Illinois; that she sold this interest to Frantz during that year for about $2800; that Frantz did not pay her any money, but later, in 1907, took the purchase price above mentioned, as well as the $600, and bought with it, for her, an 80 acres of land near Wheatland, Wyoming, known as the O'Connor eighty, for a consideration of $4,000. The title to the land, however, was taken in the name of the mother of Mrs. Wonsor and of Frantz. Only $2200 was paid in cash, a mortgage for $1800 having been

given by said mother for the remainder of the purchase price. This mortgage was later paid by Frantz, and the title, too, was transferred to him somewhat later by his mother, just prior to her death. Frantz sold the land to Mitchell in 1910 for a consideration of $65 per acre, part only of which was paid. Mitchell, after three years, turned the land back to Frantz in default of payment and the title was again taken in the name of Frantz, in whom it continued to be until he transferred the land to one Tyler T. Smith, in May, 1920, in consideration of some notes for $13,500, which Frantz had given for oil stocks, and appellant claims that this amount of $13,500 became due to her from Frantz when he thus sold and transferred the land. She also claims that she loaned Frantz $1520 about 1918, thus making the total indebtedness claimed to be due her from Frantz the sum of about $15,000, in consideration of which, as she claims, the conveyances to her, now sought to be set aside, were executed. It thus appears that the major portion of the indebtedness which she claims was owing her from Frantz arose by virtue of the claimed increased value of this land. Further than that, not only was the title to the foregoing land during most of the time in Frantz, but he also absolutely controlled the land, aside from the time that Mitchell occupied it. It does not appear that Mrs. Wonsor ever paid any taxes on the land or that she ever had any accounting with reference to the rents and profits from it, although she states that she received the profits of it for one year. The situation with reference to said land is accordingly similar to that disclosed in Culver v. Graham, 3 Wyo. 212, 21 Pac. 694. As in that case, so in this, the ownership of the land could be claimed only on the theory of a resulting trust. This court held in the Culver case that such resulting trust must be shown by clear and unequivocal evidence. No resulting trust, it is true, is sought to be established in connection with the eighty acres of land referred to, but the major portion of the indebtedness claimed to be due from Frantz to Mrs. Wonsor arose

'out of said land, and the increased value thereof, and we
think that upon analogy, it was incumbent upon Mrs. Won-
sor to establish the indebtedness arising out of her owner-
ship of said eighty acres of land by clear and unequivocal
evidence, and we cannot say from the record that she has
done so.   It is true that she testified that, she received a
deed for this land sometime in 1918 and that she had lost
it, but the court evidently did not credit her testimony on
this point, which was, by the way, not even corroborated by
Frantz, who transferred the land in 1920 without any refer-
ence to any such deed to his sister.   Further than that, Mrs.
Wonsor had no notes or other evidences of indebtedness in
connection with any of the transactions with her brother.
She did not produce, and evidently was unable to produce,
any checks, bank accounts or letters to verify any of her
statements.

We do not, accordingly, believe that the trial court was,
under these circumstances, bound to accept her claim of the
bona fide existence of the indebtedness above mentioned,
and do not think that we are warranted in disturbing the
finding of the court on this question, particularly in view
of the better opportunity which the trial court had in deter-
mining the weight to be attached to the testimony given.
Even if it be conceded that, as counsel claim, there was no
evidence to connect Mrs. Wonsor with the fraud in ques-
tion here, that would not alter the situation, for if the con-
veyances to her were in fact voluntary, it was immaterial
whether she participated in the wrong or not. Bump, supra,
p. 80.

4.   A number of errors are assigned relating to admission
of testimony.   Plaintiff introduced in evidence various
pleadings relating to the case of the bank against Frantz,
wherein it sued upon the notes hereinbefore mentioned.   The
affidavit of attachment, writ of attachment and return there-
on and the judgment rendered in the case were also intro-
duced—all over the objection of appellants.   We think
that the judgment was properly admitted for the purpose

of showing the existence of the indebtedness at the time of trial, and that the pleadings and the attachment papers were admissible to show that plaintiff obtained a lien, and that an action to obtain it had been commenced. The question asked of Ferguson, as to whether or not there was any design or conspiracy to defraud plaintiff was answered, though an objection to a similar question had been previously sustained, and no prejudice could therefore have resulted. When Mrs. Wonsor was asked whether there was any secret trust by which Frantz was to get the property back, and the objection thereto was sustained, no exception was taken, and we cannot, accordingly, consider the assignment of error relating thereto. The witness Jones was asked whether at the meeting held at the bank on January 12, 1921, Frantz made any statement that he owed Mrs. Wonsor, and the witness answered that he did not. This testimony was elicited in connection with a financial statement then made by Frantz, and tended to shed light on the intent with which the subsequent conveyance was made by him, and was admissible at least for that purpose.

Plaintiff was permitted to introduce testimony, over objection, tending to show that the 80 acres of land claimed by Mrs. Wonsor was at the time of its transfer to Tyler T. Smith worth only about $65 per acre. It is contended that the admission of this testimony was prejudicial error. Mrs. Wonsor claimed that by reason of the transfer of the land to Smith, Frantz owed her $13,500, whereas the claimed indebtedness would be only $5200, upon the basis of a value of $65 per acre for said land. The transfer to Smith was made in exchange of certain notes made by Frantz and held by Smith, of the par value of $13,500. Counsel for appellant state that there is no evidence in the record that the notes of Frantz were not at that time worth par, and that it would make no difference whether the land was worth $65 or $1,000 per acre, so long as Smith agreed to and did pay at a rate of valuation fixed by the parties. The testimony, however, had, it would seem, a tendency to show, whatever

the facts may be as to the then solvency of Frantz, that Smith either did not consider him solvent, or that there was some question as to the validity of the notes, which rendered it advisable to settle them for property worth only a little more than 38 per cent of the par value of the notes, and hence the testimony had, we think, a bearing on the bona fides of the existence of the indebtedness to Mrs. Wonsor.

Finding no prejudicial error in the record, the judgment rendered herein in the district court must be and is affirmed.

*Affirmed.*

POTTER, C. J., and KIMBALL, J., concur.