# FLAKS, INC. v. DE BERRY ET AL.

(No. 2055; June 10, 1938; 79 Pac. (2d) 825)

For the plaintiff and appellant, there was a brief and an oral argument by *Edward T. Lazear* of Cheyenne.

For the defendants and respondents, there was a brief and an oral argument by *G. R. McConnell* of Laramie.

KIMBALL, Justice.

This is an appeal from an order discharging an attachment in an action by a creditor to recover the amount of the debt and to set aside an alleged fraudulent conveyance of the attached property.

The plaintiff is Flaks, Inc., a wholesaler. The defendants are Charles DeBerry, George DeBerry, and the administrators of the estate of Athon Vassos, deceased. The theory of the plaintiff, as shown by the petition, is that Charles and George DeBerry were

co-partners, doing business under the name of Laramie Candy Kitchen, and buying merchandise of plaintiff on open running account during a period of several years before December, 1936; that in February, 1937, plaintiff learned that the DeBerrys, on May 29, 1936, had made a bill of sale purporting to transfer their interest in all the property of the Laramie Candy Kitchen to Athon Vassos, and Vassos had given Charles DeBerry a chattel mortgage of the property to secure promissory notes for $3500; that when the bill of sale and chattel mortgage were given the DeBerrys were indebted to plaintiff in the sum of $1314, and thereafter the DeBerrys continued to buy goods of plaintiff in the same way as before, until December 4, 1936, when there was due plaintiff $3245, the amount sued for. It was alleged that the conveyance of the property to Vassos on May 29, 1936, was fraudulent as to plaintiff on several of the grounds mentioned in sections 5 to 8 of the Uniform Fraudulent Conveyance Act, sections 48-105 to 48-108, R. S. 1931.

When the action was commenced, Charles DeBerry was foreclosing his chattel mortgage. Vassos had died, and his administrators were made defendants as parties claiming the property under the alleged fraudulent bills of sale. The prayer of the petition is for judgment for the debt, and for annulment of the bill of sale and chattel mortgage of May 29, 1936, to the extent necessary to satisfy plaintiff's claim.

With its petition plaintiff filed an affidavit for attachment alleging substantially the same grounds as those stated in the petition as grounds for annulling the transfer of the property. A writ of attachment was issued and levied on the property alleged to have been fraudulently conveyed.

Thereafter the defendant administrators filed a motion to discharge the attachment on grounds stated as follows:

"1. Said plaintiff had no legal right to attach said property described in the petition.

"2. That all of the property attached, described in the petition, are the assets of the estate of the deceased, Athon Vassos, and no other person has any interest therein.

"3. That the attachment issued herein is in violation of the laws of the State of Wyoming and if permitted to stand would grant the plaintiff a preference over other creditors, which is prohibited by the laws of the state of Wyoming."

With the motion there was an affidavit of the attorney for the administrators in which it was stated that George DeBerry never was a partner in the business of the Laramie Candy Kitchen; that Charles DeBerry on May 29, 1936, sold and by bill of sale transferred his interest in the business to Vassos and received from Vassos notes secured by chattel mortgage on the property; that the bill of sale and mortgage were recorded in the office of the County Clerk on June 4, 1936; that "plaintiff was paid any and all indebtedness due it on June 9, 1936"; and "that the grounds for attachment alleged by said plaintiff against these defendants are untrue."

This is the only affidavit filed by the administrators in support of their motion. Plaintiff filed no counter affidavit. No oral evidence was introduced.

The motion questions the plaintiff's right to attach property which the administrators assert is *in custodia legis*. Whether the motion was intended to raise, or was treated as raising, any other question will be discussed later.

The action, as already indicated, was under the Uniform Fraudulent Conveyance Act, which by section 9, sub-section 1 (R. S. § 48-109) declares:

"(1) Where a conveyance or obligation is fraudu-

lent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser:

"(a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim; or

"(b) Disregard the conveyance and attach or levy execution upon the property conveyed."

While there are many cases considering the rights of creditors or administrators with respect to void or fraudulent conveyances made by the deceased debtor in his lifetime (see First National Bank v. Ludvigsen, 8 Wyo. 230, 56 Pac. 994, 57 Pac. 934, 80 Am. St. Rep. 928), neither counsel nor the court have found any decision or text that discusses the right of a creditor of a living debtor to attach property in the possession of the administrator of the fraudulent vendee.

It is conceded that, ordinarily, a creditor cannot attach property rightfully in the custody of his deceased debtor's administrator. See First National Bank v. Ludvigsen, supra, at p. 243 of 8 Wyo.; Woerner on Administration (3d ed.) § 392; 4 Am. Jur. 811. The reasons shortly stated are that the attachment "would give one creditor of the dead man preference over others, and hinder the settlement of the estate." Park v. McCauley, 67 W. Va. 104, 106, 67 S. E. 174. These reasons, of course, cannot apply in a case where the debtor is living and the creditor attaches property fraudulently transferred by the debtor to one who died while in possession of the property. The right of the creditor to disregard the conveyance and attach the property presupposes that the title for the purpose of enabling the creditor to enforce his claim remains in the fraudulent grantor. See American Trust Co. v. Kaufman, 276 Pa. 35, 40, 119 Atl. 749; Rutherford v. Carr, 99 Tex. 101, 104, 87 S. W. 815; Bigelow on

Fraudulent Conveyances, p. 464. The attachment gives the creditor a lien which (at least before the Uniform Fraudulent Conveyance Act) was necessary as the basis of an action to set the conveyance aside. See Platte County State Bank v. Frantz, 33 Wyo. 336, 239 Pac. 531; Glenn on Fraudulent Conveyances, § 35. Sometimes it is said that a fraudulent purchaser holds the property in trust for creditors of the vendor. Buck v. Voreis, 89 Ind. 116; Ferguson v. Hillman, 55 Wis. 181, 191, 12 N. W. 389.

An administrator in possession of property conveyed to his intestate in fraud of creditors stands in the shoes of the deceased vendee. He takes only what his intestate rightfully held at his death. First National Bank v. Ludvigsen, supra, at p. 241 of 8 Wyo.; Federal National Bank v. Gaston, 256 Mass. 471, 478, 152 N. E. 923; Bogert on Trusts, § 12, p. 31. It is not the policy of the law that he should hold property to which others have a superior right. The statute gives the creditor the right to disregard the fraudulent conveyance and attach the property conveyed, as against any person except a purchaser for fair consideration without notice of the fraud. The administrator of the fraudulent vendee is not a "purchaser." Whether it be said that the property, as against the creditor, belongs to the debtor, or that it is held by the administrator as trustee for the creditor, does not matter. In so far as it is subject to the superior rights of the creditor, it is not rightfully in the custody of law so as to exempt it from the process of attachment.

As stated above, no cases on the precise question decided have been found. In Bradley and Co. v. Bailey, 95 Ia. 745, 64 N. W. 758, and Fleischner v. Bank of McMinnville, 36 Ore. 553, 60 Pac. 603, it was held or assumed that property regularly and lawfully in possession of an assignee for the benefit of creditors was in custody of the law, but held that a creditor contend-

ing that the assignment was void could attach the property. In Conover v. Ruckman, 33 N. J. Eq. 303, it was held that moneys in the hands of a sheriff in execution of a chancery decree for foreclosure of a mortgage might be attached at the instance of a creditor who claimed that his debtor furnished the money secured by the mortgage and fraudulently had the mortgage taken in the name of the plaintiff in the foreclosure suit. See, also, Perry v. Sharpe, 8 Fed. 15, 22.

We may concede that in some circumstances a court would be justified in refusing to permit a creditor to attach property in the hands of an administrator of a fraudulent vendee. Perhaps, in some cases the property might be considered as sufficiently impounded by being held in the possession of the administrator pending a decision of the question of fraud. In the present case, however, the property when released from the attachment became subject to sale on foreclosure of the chattel mortgage held by an alleged participant in the fraud, and we think the attachment should not have been discharged on the ground stated in the motion.

Counsel for the administrators suggest that the order discharging the attachment may be affirmed as a decision that the conveyances in question were not fraudulent as to the plaintiff. There are several reasons why we think this cannot be done. It may be doubted that the statutes (§§ 89-3342, 89-3343) providing that a defendant may challenge the attachment by a motion that may be heard on affidavits, a kind of evidence not admissible in the trial of an action, were intended to establish a procedure whereby an alleged fraudulent grantee of the attached property could have his right to the property, as between him and the attaching creditor, determined on the hearing of a motion to discharge the attachment. In fraudulent conveyance cases, under the law of this state before

the enactment of the Uniform Fraudulent Conveyance Act (see Platte County State Bank v. Frantz, 33 Wyo. 326, 239 Pac. 531), an attachment establishes a lien, a necessary preliminary step in proceedings by the creditor to have the conveyance declared fraudulent as to him, and a dissolution of the attachment on motion would deny to the creditor the right to a formal trial on the question of the validity of the conveyance. If, under section 48-109, subsection (1) (a), supra, of the Uniform Act, he could continue to litigate that question after losing his lien, a judgment in his favor might be of no value. Ordinarily the existence of the grounds of attachment may be determined on a motion to discharge. Wearne v. France, 3 Wyo. 273, 21 Pac. 703; First National Bank v. Swan, 3 Wyo. 356, 23 Pac. 743. Whether that is so when the facts constituting the grounds of attachment are the same as the facts constituting the cause of action, and raise an issue as to the title to the attached property, is a doubtful question. The point has not been argued, and need not be decided. We call attention, however, to cases showing that, in acting on a motion to dissolve an attachment, courts are at least reluctant to decide matters that go to the merits of a cause of action or the title to the property. See Collins v. Stanley, 15 Wyo. 282, 292, 88 Pac. 620; Northwestern Wheel & Foundry Co. v. Salt Lake etc. Co., 11 Utah 404, 40 Pac. 702; Newell v. Whitwell, 16 Mont. 243, 40 Pac. 866; Kuehn v. Paroni, 20 Nev. 203, 19 Pac. 273; Anspaugh v. Spring Lake, 58 N. J. Law 136, 32 Atl. 77; Landauer v. Mack (on rehearing) 43 Neb. 430, 61 N. W. 597; McDonald v. Marquardt, 52 Neb. 820, 73 N. W. 288; Western Grocer Co. v. Alleman, (on rehearing) 81 Kan. 900, 106 Pac. 997, 27 L. R. A. (N. S.) 624; First Trust & Sav. Bank v. Randall, 57 Ida. 126, 63 P. (2d) 157; Johnson v. Hardwood Door & Trim Co., 29 N. Y. Supp. 797; Perry v. Sharpe, 8 Fed. 15, 22-23.

If we should concede that the administrators had the right to have the issue as to the validity of the conveyances tried and decided on a motion to discharge the attachment, we must hold that there was no such trial and decision in the present case. We doubt that the motion to discharge and the supporting affidavit were intended to raise any issue except one of law arising from the admitted fact that the administrators had succeeded to the right of Vassos in the property. See Bank of Commerce v. Latham, 8 Wyo. 316, 57 Pac. 184. The record does not show that any evidence was introduced or considered, or that any finding of fact was made. The order appealed from recites that the motion came on for hearing, and the court "having listened to the arguments of counsel, and their citations of authority," took the matter under advisement, and that later, the court being "fully advised as to the law applicable to said motion," ordered that the attachment be dissolved and the property returned to the possession of the administrators. We think this order cannot be treated as a decision that the conveyances in question were not fraudulent.

The plaintiff, as appellant in this court, says that it would now be useless to reinstate the attachment, but asks that the order of discharge be reversed so that it may not hereafter be relied on in a possible suit for damages for wrongful levy. The order will be reversed, but if the property cannot now be reached there will be no necessity for further proceedings on a reinstated writ.

*Reversed.*

BLUME, Ch. J., and RINER, J., concur.