No. 62,552

GORHAM STATE BANK, *Appellant*, v. BERNIECE M. SELLENS, *et al.,*
*Appellees.*

(772 P.2d 793)

Opinion filed April 14, 1989.

*Alan F. Alderson,* of Alderson, Alderson & Montgomery, of Topeka, argued the cause, and *Joseph M. Weiler,* of the same firm, was with him on the brief for appellant.

*Jerry E. Driscoll,* of Driscoll & Driscoll, of Russell, argued the cause, and *Richard M. Driscoll,* of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by Gorham State Bank from an order of the Russell County District Court granting summary judgment to the defendants in a civil action filed by plaintiff bank to set aside certain conveyances of real estate as having been made with intent to hinder, delay, and defraud creditors of defendant Berniece M. Sellens. Summary judgment was granted to defendants on the ground that this civil action was commenced more than four months after the first publication of notice to creditors in the estate of Berniece Sellens' husband, Ralph Sellens, to whom the subject real estate had been conveyed. The district court ruled that the nonclaim statute, K.S.A. 1988 Supp. 59-2239, barred the claim of plaintiff bank to the properties, which had been listed as assets of the decedent's estate. We reverse.

The underlying facts leading to this appeal are not disputed. Sometime prior to May 23, 1984, the plaintiff, Gorham State Bank, made an unsecured loan to the defendant, Berniece M. Sellens. Following a number of extensions, the loan became due December 11, 1984, in the amount of $82,880.83. Berniece defaulted on the loan.

At the time the loan was originally made, Berniece and her husband, Ralph Sellens, owned several parcels of real estate in Russell County in joint tenancy. On July 29, 1985, Berniece

Sellens and Ralph Sellens, as joint tenants, conveyed the real estate to Ralph Sellens, individually. The deeds were promptly recorded.

On October 15, 1985, the Gorham State Bank filed suit in Russell County District Court against Berniece M. Sellens and on December 27, 1985, secured a default judgment in the amount of $82,880.83 plus interest thereon at 14 percent per annum from December 11, 1984.

Ralph Sellens died January 7, 1986, and his widow was appointed executrix of his will and estate on January 14, 1986. Berniece Sellens, as executrix, first published the notice to creditors required by K.S.A. 1988 Supp. 59-2236 on January 20, 1986. On May 5, 1986, Berniece disclaimed all her interest in her husband's estate pursuant to K.S.A. 59-2291 *et seq.* The four-month period for filing claims or demands against Ralph Sellens' estate expired May 20, 1986. No claim or demand was filed by Gorham State Bank within that statutory period. The inventory and appraisal filed in Ralph's estate in January 1987 included the real properties described in the July 1985 deeds.

On June 12, 1986, this action was filed by the bank against Berniece M. Sellens, individually and as executrix of her husband's will and estate. The defendant answered, raising, *inter alia,* the defense that the plaintiff's claim was barred by the nonclaim statute, K.S.A. 1988 Supp. 59-2239. Thereafter, Berniece resigned as executrix due to ill health, and Joyce A. Mahoney was appointed as administrator C.T.A. On June 19, 1987, she was substituted as a party defendant in this case in place of Berniece M. Sellens, executrix. On July 29, 1987, the defendants Berniece M. Sellens, individually, and Joyce A. Mahoney, as administrator C.T.A., filed a motion for summary judgment asserting that this action was barred by the nonclaim statute.

On May 23, 1988, the trial court rendered its memorandum decision granting summary judgment to the defendants, reasoning that plaintiff's exclusive remedy was to file a demand or claim against the estate of Ralph Sellens, and since the plaintiff failed to do so the action was barred by K.S.A. 1988 Supp. 59-2239. Plaintiff has appealed. The case was transferred to this court pursuant to K.S.A. 20-3018(c).

The scope of appellate review applicable when a grant of summary judgment is challenged has been stated many times.

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.] The party opposing summary judgment, however, has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case. [Citation omitted.] If factual issues do exist, they must be material to the case to preclude summary judgment. [Citation omitted.]" *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 306-07, 756 P.2d 416 (1988).

As noted in *Bacon*, the mere existence of unresolved factual issues does not necessarily preclude summary judgment. "If a disputed fact, however resolved, could not affect the judgment it is not a material fact so as to preclude summary judgment." *In re Estate of Messenger*, 208 Kan. 763, Syl. ¶ 4, 494 P.2d 1107 (1972); see *Secrist v. Turley*, 196 Kan. 572, 575, 412 P.2d 976 (1966).

Plaintiff relies upon K.S.A. 33-102, a section of the Kansas Statute of Frauds that has not been amended since its enactment in 1868. The statute provides:

"33-102. **Transfers to delay or hinder creditors or purchasers.** Every gift, grant or conveyance of lands, tenements, hereditaments, rents, goods or chattels, and every bond, judgment or execution, made or obtained with intent to hinder, delay or defraud creditors of their just and lawful debts or damages, or to defraud or to deceive the person or persons who shall purchase such lands, tenements, hereditaments, rents, goods or chattels, shall be deemed utterly void and of no effect."

It is the plaintiff's position that the July 1985 conveyances of the real property from Berniece and Ralph, as joint tenants, to Ralph, individually, were made with intent to defraud the plaintiff, a creditor, and that the conveyances were void under the statute. Plaintiff then contends that, since the conveyances were void, title to the property vested in Berniece as the surviving joint tenant by operation of law upon the death of Ralph. Thus, the property never became a part of Ralph's estate, and therefore plaintiff was not required to file a claim or demand against the estate and the nonclaim statute is inapplicable.

Defendants, on the other hand, assert that, because record title to the real estate was in Ralph, this is an action to withdraw or remove property from the estate, and it had to be filed as a claim

or demand against the estate within the four-month period of the nonclaim statute.

This court has held that whether or not a conveyance is fraudulent as to creditors under K.S.A. 33-102 is largely a question of fact. *Credit Union of Amer. v. Myers*, 234 Kan. 773, Syl. ¶ 5, 676 P.2d 99 (1984), and cases cited therein; *Polk v. Polk*, 210 Kan. 107, 110, 499 P.2d 1142 (1972); *Walkeen v. Brown*, 88 Kan. 571, 572, 128 Pac. 1122 (1913); *Parmenter v. Lomax*, 68 Kan. 61, 66, 74 Pac. 634 (1903). The party alleging a fraudulent conveyance must prove the allegation by clear and convincing evidence. *Nordstrom v. Miller*, 227 Kan. 59, 65, 605 P.2d 545 (1980). However, a party resisting a motion for summary judgment need not present this quantum of evidence in order to succeed in opposing the motion. *Credit Union of Amer. v. Myers*, 234 Kan. 773, Syl. ¶ 7.

For purposes of this appeal, the issue is not whether the conveyance was fraudulent, but whether a determination of that fact issue could affect the judgment and whether the plaintiff is timely in asserting its cause of action. If so, there remain unresolved "material" facts which precluded summary judgment.

Along with similar early statutes of other states, K.S.A. 33-102 was based upon the 16th century Statute of Elizabeth (13 Eliz. ch. 5 [1570]). Like the Statute of Elizabeth, our statute explicitly provides that a fraudulent conveyance "shall be deemed utterly void and of no effect." However, the courts have not been in agreement as to the practical effect of such a conveyance. In 37 Am. Jur. 2d, Fraudulent Conveyances § 106, it is stated:

"The early statutes and many of those which have been patterned after them declared that the prohibited conveyance should be 'void'; and if this language were to be taken literally, the consequence would be to render the transaction invalid and ineffectual, not only as to persons who have been defrauded, but also as to strangers and even the transferor himself. The Uniform Fraudulent Conveyance Act [which Kansas has not adopted], on the other hand, does not, in terms, state that a conveyance shall be 'void,' providing merely that certain conveyances shall be 'fraudulent.' Under both the older statutes and the Uniform Act, the courts have generally held that *a voluntary or fraudulent conveyance is valid between the parties and in fact as to the whole world, except those within the protection of the statutes.* The word 'void' in the statutes has ordinarily been construed to mean 'voidable,' and 'voidable' only at the instance and option of those who are within the meaning of the expression 'creditors and others' or 'purchasers.' Hence, *even as against creditors, the generally prevailing view is that a fraudulent conveyance is merely voidable at their option.* The statement that a fraudulent transfer is void as to creditors is generally held to mean that the

rights of creditors are not affected by the transfer, that creditors may, notwithstanding the transfer, avail themselves of all remedies for collecting their debts out of the property or its avails, and that in pursuing those remedies they may treat the property as though the transfer had not been made—that is, as the property of the debtor. The conveyance will be held to have been ineffectual as to the transferor's creditors only to the extent that may be necessary in order that the debts may be paid." (Emphasis added.)

Additional insight into the history of the Statute of Elizabeth, our statute of frauds, and early cases applying our statute may be found in Moreau, *Fraudulent Conveyances In Kansas—Substantive Law*, 11 J.K.B.A. 205 (1943); Christenson, *Fraudulent Conveyances In Kansas*, 8 J.K.B.A. 360 (1940); and 1 Glenn, Fraudulent Conveyances and Preferences § 58 (rev. ed. 1940).

The Kansas cases appear to follow a variation of the general rule. While recognizing that legal title passes to the donee of the fraudulent conveyance, our cases hold that equitable title remains with the donor. Thus, the conveyance is void only as to the equitable title and is merely voidable as to the legal title.

In *Bremen State Bank v. Loffler*, 121 Kan. 6, 245 Pac. 742 (1926), a creditor attached Kansas land belonging to a nonresident debtor. The debtor contended that he had no attachable property in Kansas because he had conveyed his Kansas realty to his son, admittedly for the purpose of defrauding his creditors. The court rejected the debtor's motion to dissolve the attachment, noting that it was clear the transfer was designed to secure the property against attachment or execution. This court concluded:

"It is the policy of the law that a debtor's property shall be liable for his debts, and he cannot avoid liability by a fraudulent transfer. *Such a transfer is void at law as well as at equity, and is to be treated as a nullity.* While the legal title had been transferred by the defendant, he was the equitable owner of the property. An equitable interest in land is subject to attachment although the legal title is held by another. (*Bullene v. Hiatt*, 12 Kan. 98, *Shanks v. Simon*, 57 Kan. 385, 46 Pac. 774; *Parmenter v. Lomax*, 68 Kan. 61, 74 Pac. 634.)" 121 Kan. 9. (Emphasis added.)

This language was recently quoted with approval in *In re Hensley*, 70 Bankr. 237, 239 (Bankr. D. Kan. 1987). The pertinent syllabus paragraph of *Bremen State Bank* reads:

"A fraudulent transfer of land made to defeat a creditor is a nullity *as to the creditor*, and although the debtor has placed the legal title in another, his equitable interest in the land is subject to attachment for his debt." 121 Kan. 6, Syl. ¶ 3. (Emphasis added.)

In *Stumbaugh v. Anderson,* 46 Kan. 541, 26 Pac. 1045 (1891), judgment creditors brought suit to set aside a deed made by the Andersons to their two sons. Judgment was entered for defendants, and the creditors appealed. This court reversed, stating:

"While a voluntary conveyance of land from a parent to his infant would be valid, where the claims of creditors do not intervene, yet if creditors are prejudiced by such a conveyance, *they would have an equitable right to set it aside, or to avoid it to the extent at least of the debts due them.*" 46 Kan. at 542. (Emphasis added.)

In *Parmenter v. Lomax,* 68 Kan. 61, a judgment creditor sued in equity to set aside certain transfers of real estate that had been made by the debtor to his relatives before the judgments were entered, but after the liability giving rise to the judgments was incurred. Although judgment was held properly entered against the judgment creditor for lack of evidence of fraud, this court held that the judgment creditor had a right to maintain the action in pursuit of the equitable interest in the land, which the court held was subject to attachment in Kansas.

In the recent case of *Credit Union of Amer. v. Myers,* 234 Kan. at 778, this court stated, "In Kansas every conveyance of land made with the intent to defraud creditors is deemed utterly void and of no effect. K.S.A. 33-102."

Research has disclosed only one case that is factually similar to the instant appeal. In *Flaks, Inc. v. DeBerry, et al,* 53 Wyo. 203, 79 P.2d 825 (1938), 116 A.L.R. 1191, a creditor corporation sued its debtor for judgment for the amount owing, and to set aside an allegedly fraudulent conveyance of the debtor's business to a third person, Vassos, to the extent of the debt. Vassos had died, and his administrators were named as defendants. Plaintiff also sought to attach the property alleged to have been fraudulently conveyed.

Unlike Kansas, Wyoming had enacted the Uniform Fraudulent Conveyance Act. That act permitted defrauded creditors either to have the conveyance set aside to the extent necessary to satisfy the claim, or to disregard the conveyance and attach or levy execution upon the property conveyed. The lower court granted the defendants' motion to discharge the attachment for reasons that were not made clear.

The Wyoming Supreme Court reversed, holding that the attachment should not have been discharged for the reasons stated in defendants' motion, which in part contended that the property

was an asset of Vassos' estate. In reaching that conclusion, the court stated:

"The right of the creditor to disregard the conveyance and attach the property presupposes that the title for the purpose of enabling the creditor to enforce his claim remains in the fraudulent grantor. [Citations omitted.] The attachment gives the creditor a lien which (at least before the Uniform Fraudulent Conveyance Act) was necessary as the basis of an action to set the conveyance aside. [Citations omitted.] Sometimes it is said that a fraudulent purchaser holds the property in trust for creditors of the vendor. [Citations omitted.]

"An administrator in possession of property conveyed to his intestate in fraud of creditors stands in the shoes of the deceased vendee. He takes only what his intestate rightfully held at his death. [Citations omitted.] It is not the policy of the law that he should hold the property to which others have a superior right. The statute gives the creditor the right to disregard the fraudulent conveyance and attach the property conveyed, as against any person except a purchaser for fair consideration without notice of the fraud. The administrator of the fraudulent vendee is not a 'purchaser.' Whether it be said that the property, as against the creditor, belongs to the debtor, or that it is held by the administrator as trustee for the creditor, does not matter. In so far as it is subject to the superior rights of the creditor, it is not rightfully in the custody of law so as to exempt it from the process of attachment." 53 Wyo. at 210-11.

We recognize, of course, that *Flaks* is clearly distinguishable from the present case; however, much of what is said is informative and applicable to an action under K.S.A. 33-102.

It appears clear that K.S.A. 33-102 may be literally applied when the property is fraudulently conveyed with the knowledge and consent of the grantee and the rights of innocent third parties have not intervened, and in an appropriate case the equitable title, at least, remains in the fraudulent grantor. On the other hand, the rights of innocent third parties such as bona fide purchasers for value, without notice or knowledge of any fraud, are fully protected under our decisions, and in certain instances under other applicable statutes such as the real estate recording and notice statutes. We need not determine here the scope of K.S.A. 33-102 as it applies to other possible factual situations; nor are we called upon to determine the interest, if any, Berniece retains in the property. Suffice it to say, the issue at this point is whether under K.S.A. 33-102 Berniece retained any interest in the real property. If plaintiff can meet its burden of proof under the statute, the conveyances may be void, at least to the extent of the interest of Berniece in the property.

However, the foregoing determination does not conclude this appeal. Resolving the inferences which may reasonably be

drawn from the facts in favor of plaintiff, who was the party opposing summary judgment, we must assume that the conveyances were fraudulent and therefore void under K.S.A. 33-102, at least as to plaintiff. If so, was it necessary for plaintiff to file a claim or demand against Ralph's estate within the period of the nonclaim statute? We think not.

The defendants, as did the trial court, rely heavily on the numerous cases and authorities which assert the oft-repeated rules that, to take property out of an estate, one must proceed in probate court under the probate code, but to bring property into an estate, one must proceed under the code of civil procedure in the district court. See, *e.g.*, *In re Estate of Thompson,* 164 Kan. 518, 190 P.2d 879 (1948). Since unification of the Kansas court system, the probate courts have been abolished and all probate matters are handled in the district court. However, the procedural rules and jurisdictional requirements still remain, and probate proceedings in the district court are governed by the probate code (K.S.A. ch. 59), while other civil actions are generally governed by the code of civil procedure (K.S.A. ch. 60). While we recognize the validity and general application of the position asserted by the defendants and adopted by the trial court, under the specific facts presented we do not find that plaintiff is attempting to take property out of Ralph's estate. On the contrary, if plaintiff meets its burden of proof under K.S.A. 33-102 then Berniece's interest in the property never became a part of Ralph's estate. To that extent plaintiff is not asserting any claim or demand against the estate but only against Berniece as to her interest in the property. There is substantial support and authority for the plaintiff's position.

Plaintiff relies heavily on *Windscheffel v. Wright,* 187 Kan. 678, 360 P.2d 178 (1961), for the argument that the nonclaim statute does not apply to an action alleging a fraudulent conveyance. In *Windscheffel,* Evaline Post Wright, the owner of a life estate, also had the power to sell the realty and hold the proceeds for the remaindermen. In 1936, the life tenant conveyed the property to her husband, who reconveyed it to her in fee simple for the purpose of cutting off the remaindermen's interests. Evaline died testate on November 10, 1957, and her estate was probated in Freemont County, Iowa. An action was commenced by the remaindermen to recover the real property. The court

held the attempted conveyances between Evaline and her husband were void because of Evaline's breach of her fiduciary duty owed the remaindermen. The defendants, who included Evaline's surviving husband and the beneficiaries under Evaline's will, asserted the conveyance to her husband was valid under the power of sale and also argued the action was barred by the nonclaim statute. This court held there was no valid sale and stated:

"The appellants contend that the district court had no jurisdiction of the subject of the action and that the cause of action is barred by the statute of nonclaims (G.S. 1949, 59-2239). It is argued that the petition attempts to set up what can only be a claim against Evaline's estate because it seeks to take the undivided 7/9ths interest in the property in question out of her estate. We do not agree. The property was never a part of Evaline's estate. Not having sold the property during her lifetime, the life estate devised to her under the testator's will terminated upon her death November 10, 1957." 187 Kan. at 690.

While it is true that the action in *Windscheffel* was not based upon K.S.A. 33-102, the case clearly stands for the proposition that if a conveyance is a nullity the property never becomes a part of the deceased grantee's estate and the nonclaim statute does not apply. The holding in *Windscheffel* was recognized and commented upon in *In re Estate of Zimmerman*, 207 Kan. 354, 485 P.2d 215 (1971). For other variations and applications of the rule, see *Oswald v. Weigel*, 215 Kan. 928, 529 P.2d 117 (1974); *Hurley v. Painter*, 180 Kan. 552, 306 P.2d 184 (1957); and *In re Estate of Slaven*, 177 Kan. 185, 277 P.2d 580 (1954).

Defendants contend that the plaintiff's claim is tantamount to a demand against Ralph's estate because the real estate at issue was inventoried and appraised by the executrix as a part of the decedent's estate. In *Adams v. Adams*, 4 Kan. App. 2d 1, Syl. ¶ 2, 602 P.2d 115 (1979), *rev. denied* 227 Kan. 927 (1980), the Court of Appeals held: "A claim of ownership to real estate inventoried in a decedent's estate during probate proceedings constitutes a 'demand' within the meaning of K.S.A. 59-2239." In the present case, however, plaintiff is not claiming ownership of the subject property. Instead, it claims that *Berniece* is still the rightful owner of the property that she allegedly fraudulently conveyed to Ralph. *Adams* does not mention *In re Morgan*, 219 Kan. 136, 546 P.2d 1394 (1976), where this court held:

"The mere fact that the property was inventoried is not conclusive, of course. In *Oswald v. Weigel*, 215 Kan. 928, 529 P.2d 117, we recognized that the

inventory is only *prima facie* evidence of the contents of an estate. There, an executrix in possession of cattle under a bill of sale was held to have good title as against the estate despite her inclusion of the cattle in the estate inventory . . . . Further, since the property did not belong to the estate no action was required to take it out of the estate and the non-claim statute was inapplicable." 219 Kan. at 138.

It must also be noted that the inventory and appraisal, upon which defendants seek to rely, was not even filed until January 1987, nearly eight months after the running of the nonclaim statute. Defendants cannot rely upon the filing of the inventory as imparting notice to the plaintiff that the property belonged to Ralph.

In summary, the question of whether plaintiff was required to file a claim against Ralph's estate depends upon whether Berniece retained an interest in the subject real estate which never became a part of the decedent's estate in the first place. If she did, there was no need to file a claim or demand in Ralph's estate as to her retained interest in the property.

We conclude that under the peculiar facts of this case, and limited to those facts, the trial court was premature in granting summary judgment. If plaintiff can prove its case that the original conveyances from Berniece to Ralph were void as to these parties under K.S.A. 33-102, then this action was proper. The action is primarily against Berniece and whatever interest, if any, she still owns in the property and not against any interest belonging to the estate. While the defendants may be united in interest in attempting to defeat plaintiff's cause of action, the claim of plaintiff is not against Ralph's estate or any interest it may have in the property but is against the alleged interest of Berniece in the property. Under such circumstances the non-claim statute is no bar to plaintiff's action. There remain unresolved material facts which should be determined after an appropriate trial. We wish to emphasize that we are making no determination of what interest, if any, Berniece might have retained in the property or of any issues other than the limited one addressed herein.

In view of the result reached, it is not necessary for us to reach the other issues and arguments raised by the parties.

The judgment is reversed and the case is remanded for further proceedings.