IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,389

In the Matter of the Estate of BEUFORD W. RICKABAUGH
a/k/a B.W. RICKABAUGH, Deceased.

SYLLABUS BY THE COURT

1.

Defects in statutory probate procedures do not invalidate any proceedings unless they affect the substantial rights of the parties.

2.

A successful request for relief from judgment in a civil proceeding vacates the order or judgment but leaves the underlying case and the original pleadings intact.

3.

When the record shows that notice was given and the court has jurisdiction over the parties and the subject matter, mere procedural defects do not render proceedings in probate void.

4.

The purpose of the probate code is to assure the prompt marshalling of the assets and liabilities of a deceased so that legitimate debts may be paid and the remaining estate may be distributed, either in accordance with the deceased's wishes as expressed in a properly executed will, or, in the absence of such a will, as prescribed by statute.

1

5.

Although K.S.A. 59-2204 requires that a petitioner in probate cause the matter to be set for a hearing, the statute does not define the means for setting down a hearing. The probate statutes do not require a written order setting a hearing.

6.

A court sets a matter down for hearing when it schedules the matter for trial or hearing, usually by making a docket entry, that is, by entering the title of the action in the court's calendar.

7.

When a lower court correctly sets out facts and analyzes the legal issues, an appellate court may rely on that opinion.

8.

The burden of proving the revocation of a will lies on the party asserting the revocation.

Review of the judgment of the Court of Appeals in 51 Kan. App. 2d 902, 358 P.3d 859 (2015). Appeal from Greenwood District Court; MICHAEL E. WARD, judge. Opinion filed March 3, 2017. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Stanley R. Ausemus*, of Stanley R. Ausemus Chartered, of Emporia, and *Dan E. Turner* and *Phillip L. Turner*, of Turner & Turner, of Topeka, were on the briefs for appellant Everett W. Rickabaugh.

*Rachael K. Pirner* and *Shane A Rosson*, of Triplett, Woolf & Garretson, LLC, of Wichita, and *Thomas A. Krueger*, of Krueger & Williams, of Emporia, were on the brief for appellees Angella Rickabaugh Glasgow and Lisa Rickabaugh.

The opinion of the court was delivered by

ROSEN, J.: This appeal involves a contest between, on the one hand, the disinherited son of the decedent and, on the other hand, the son's daughters, who are the beneficiaries under the decedent's will. At the core of the appeal is the interpretation of the procedural requirements that the Probate Code sets for parties petitioning for probate.

Beuford W. Rickabaugh executed a Last Will and Testament on December 10, 1992. The will directed that, if his wife did not survive him by 60 days, his estate should be placed in a trust for the benefit of his granddaughters, Angella Kay Rickabaugh (Glasgow) and Lisa Jo Rickabaugh. On September 16, 1997, he executed a codicil that did not change the bequest to his granddaughters. On December 19, 2001, he executed another codicil, again leaving intact the bequest to the granddaughters. That codicil named Dale Zimmerman and Geraldine Vann co-trustees for the benefit of the granddaughters.

Beuford died on April 4, 2012, at the age of 84. The certificate of death listed the death as natural, with the cause of death attributed to acute myocardial infarction, congestive heart failure with cariogenic shock, and lymphoma. He was survived by his son, Everett, by the two granddaughters, and by a brother and sister. Two daughters predeceased him.

On April 16, 2012, Geraldine Vann filed in Greenwood district court a petition for probate of will and issuance of letters testamentary. On the same day, the court entered an order appointing Vann special administrator of Beuford's estate. The court also set a hearing date of May 14, 2012, on its calendar. On April 19, 2012, April 26, 2012, and

May 3, 2012, Vann placed notices of hearing in the Madison News, a local weekly newspaper.

On May 14, 2012, an uncontested hearing was held, following which the district court granted Vann's petition, admitted Beuford's will to probate, and issued letters testamentary. On June 25, Everett filed a petition and motion to vacate or reconsider the order admitting the will to probate. He alleged that the district court had never entered a statutorily mandated order for hearing and that an evidentiary hearing was necessary.

On June 28, Vann's attorney, Karen McIlvain, filed an affidavit in which she averred that she had served copies of notice under K.S.A. 59-2209 and 59-2211, the petition for probate, the last will and testament, and an affidavit pursuant to the Servicemembers Civil Relief Act by placing the documents in the United States mail addressed to Everett and Angella, and that she hand-delivered the documents to Lisa.

On July 20, Vann filed a motion to approve her resignation as executor, based on the request of Lisa and Angella, who had engaged their own counsel. Everett filed an objection to the motion, contending that Vann was an interested party as a witness to Beuford's death and that the granddaughters had exercised improper influence over Vann, seeking her resignation so that they could seize control of the estate proceedings. In a subsequent pleading, Everett alleged that the granddaughters were responsible for Beuford's "premature" death because they removed life-sustaining medical devices from Beuford's hospital care. He next filed a petition to exhibit claims against the estate, asserting that he had entered into an oral contract with Beuford, the terms of which were that Everett would provide farming services to Beuford in exchange for all of his estate upon his death.

4

On August 22, the district court granted Vann's resignation as executor and appointed a successor administrator, Joseph Wendling. On October 12, Everett filed a petition seeking judgment that the district court lacked jurisdiction over Beuford's will and codicils due to a failure to comply with the statutory hearing notice. On October 22, Wendling filed an answer to the petition. Wendling stated that the original petition was set for hearing "in accordance with the normal practices of the Greenwood County District Court when the original petition was filed to admit the Last Will and Testament and a Notice of Hearing was sent to the Petitioner along with the other documents."

On June 6, 2013, the district court set aside its order of May 14, 2012, admitting the will to probate. The court rejected Everett's argument that Vann had failed to cause the matter to be set for a hearing but determined that the will was not self-proved. On June 10, 2013, Everett filed a notice of appeal to the Court of Appeals seeking review of the decision that the probate petition had been properly set for hearing. The appeal was docketed as case number 110,032. Angella and Lisa filed motions for involuntary dismissal of the appeal as improperly interlocutory, which the Court of Appeals granted on August 1, 2013.

On August 20, 2013, the district court entered an order readmitting the will to probate. On September 16, 2013, Everett filed a second notice of appeal from the June 6 order, apparently hoping that the order of August 20 sufficed to provide finality for purposes of appeal. The appeal was docketed as case number 110,576. Angella and Lisa again moved for involuntary dismissal of the appeal, and Wendling joined the motion. On November 7, 2013, the Court of Appeals again granted the motion to dismiss as interlocutory.

In the meantime, the district court conducted an evidentiary hearing addressing Everett's objections to the validity of the will, which included arguments that: Beuford

5

had revoked the will and codicils, both orally and through an unavailable new will or codicil; Beuford had entered into an oral contract with Everett to leave the entire estate to him in exchange for occasional work on the farm; and the daughters murdered Beuford in order to expedite their access to his estate.

On January 28, 2014, the district court filed a memorandum opinion constituting a final order. The court rejected Everett's arguments and held that Beuford's estate passed under the will to Angella and Lisa in equal shares. Everett filed a timely notice of appeal to the Court of Appeals. Lisa and Angella filed a timely notice of cross-appeal, which they never docketed. The Court of Appeals resolved the issues against Everett in a published opinion. This court granted Everett's request for review of four of the five issues that he raised below.

This court has also taken on review *In re Estate of Clare*, 51 Kan. App. 2d 886, 357 P.3d 303 (2015), reversed in *In re Estate of Clare*, ___ Kan. ___, ___ P.3d ___ (No. 112,762, this day decided). *Clare* presents a question closely related to an issue raised in the present appeal. Because the present case resolves that question, this opinion will also discuss the Court of Appeals opinion in *Clare*.

*Principles of Probate Procedure*

Since unification of the Kansas court system, all probate matters are handled by the district courts, but probate proceedings are governed by Chapter 59 of the Kansas Statutes Annotated. *Gorham State Bank v. Sellens*, 244 Kan. 688, 695, 772 P.2d 793 (1989). Nevertheless, "the determination of any issue of fact or controverted matter" in a probate proceeding is governed by the rules of evidence set out in the code of civil procedure. K.S.A. 59-2212.

6

Defects in statutory probate procedures do not invalidate any proceedings unless they affect the substantial rights of the parties. See K.S.A. 59-2201 (no defect in statement of jurisdictional facts invalidates any probate proceedings); K.S.A. 59-2211 (no defect in notice or service invalidates proceedings after court approves notice and proof of service); *In re Estate of Newland*, 240 Kan. 249, 254, 730 P.2d 351 (1986) (failure to file accounting is merely procedural; failure to do so does not disturb court's jurisdiction); *In re Estate of Shaffer*, 203 Kan. 264, 269, 454 P.2d 1 (1969) (petition lacking verification not nullity; trial court may exercise discretion to allow amendment of petition); *In re Estate of Dumback*, 195 Kan. 26, 28-29, 402 P.2d 779 (1965) (defect in notice of probate hearing giving interested party 5 additional days beyond statutory limit did not go to jurisdiction of court or render notice of hearing void); *In re Estate of Garnand*, 177 Kan. 168, 171-73, 277 P.2d 602 (1954) (defects in service and form of petition not jurisdictional and not fatal to creditors' claims in probate). A challenge to the validity of a probate proceeding therefore includes an examination of whether the rights of the challenging party were impaired as a result of any technical errors in following statutory mandates.

*Did the Order Setting Aside the Order Admitting the Will to Probate End the Proceeding?*

Everett initially argues that the proceedings in this case should have terminated upon the district court's entry of an order setting aside its order admitting the will to probate. Under the rubric of this issue, Everett sets out an argument that is challenging to articulate or understand. He apparently contends that a K.S.A. 60-260(b) order relieving a party from a judgment concludes the matter at issue and requires a refiling of a petition, presumably under a new docket number, to allow any further judicial action to be taken on the matter.

7

The Court of Appeals formulated and analyzed Everett's argument as follows:

"Everett fashions a strange argument based on K.S.A. 60-260(b) to the effect that the district court's ruling setting aside the original order admitting Beuford's will to probate somehow voided the petition itself—requiring the executor to file a new petition that would have been time barred. Everett cites no authority for this point. We aren't surprised, since the very recitation of the proposition suggests waywardness.

"Under K.S.A. 59-2213, an interested party may act to set aside an order or judgment as provided in K.S.A. 60-260(b). In turn, K.S.A. 60-260(b) outlines five specific bases on which a court 'may relieve a party . . . from a final judgment, order, or proceeding' and a sixth catch-all provision covering 'any other reason' warranting relief. Everett's request to set aside the order admitting Beuford's will for probate following the May 14 hearing came within K.S.A. 59-2213 and was, therefore, governed by K.S.A. 60-260(b). As the district court found, Everett correctly asserted Beuford's will was not self-proving and no evidence was presented at the May 14 hearing to otherwise prove its validity. The district court set aside the order and scheduled a new hearing.

"Everett contends the district court invoked the wrong relief under K.S.A. 60-260(b). And that's where his argument ventures into legal fantasy. Everett says the petition to admit Beuford's will 'merged' into the order entered following the May 14 hearing and, as a result, ceased to exist for any legal purpose. So, according to Everett, when the district court set aside that order, the executor of Beuford's estate had to file a second petition to admit the will to probate and that petition would have been outside the 6-month deadline in K.S.A. 59-617.

"The lynchpin of Beuford's argument is the ostensible merger of the petition and the order, thereby treating the two as inextricably bound with respect to the remedy. But neither K.S.A. 60-260(b) nor its federal counterpart, Fed. R. Civ. P. 60, operates that way. A successful request for relief vacates the order or judgment but leaves the underlying case and the original pleadings intact. See *Price v. Wyeth Holdings Corp.*, 505 F.3d 624, 631-32 (7th Cir. 2007) (under Rule 60[b][4] court must vacate judgment rather than dismiss action); *United States v. Certain Property Located at Route 1, Bryant, Ala.*,

8

126 F.3d 1314, 1318 (11th Cir. 1997) (appellate court applied Rule 60[b][6] to vacate default judgment entered against property owners in forfeiture proceeding but did not order dismissal of action). The Kansas appellate courts regularly look to federal authority construing Fed. R. Civ. P. 60 for guidance. See *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 62-63, 523 P.2d 351 (1974).

"Accordingly, Everett has no legitimate claim to relief on the notion that the district court's ruling vacating the May 14 proceedings and the resulting order admitting Beuford's will to probate rendered the original petition a legal nullity. We reject the point." *Rickabaugh*, 51 Kan. App. 2d at 926-27.

This analysis is sound. Granting a motion to vacate an order under K.S.A. 60-260(b) does not automatically end a civil proceeding. See, in addition to the authority cited above, *Daniels v. Chaffee*, 230 Kan. 32, 41-44, 630 P.2d 1090 (1981) (district court has broad discretionary power under K.S.A. 60-260[b] to relieve a party from final judgment and to grant new trial). We affirm the Court of Appeals on this issue.

*Did the District Court Err When It Ordered* Sua Sponte *a New Hearing After Setting Aside the Order Admitting the Will to Probate?*

Everett apparently contends that, once the district court set aside its earlier order to admit the will to probate, the burden was on the administrator to request a hearing and proffer evidence in support of probate. He suggests that when the district court issued an order of hearing on June 6, 2013, it somehow inherently deprived him of notice, thereby violating his right to due process.

The law in Kansas does not support Everett's position. Lisa and Angella had already requested a hearing when they filed their original petition. Notice of that hearing was served on Everett. An amended petition in probate that cures a defective verification

9

relates back to the time of the original petition. *Shaffer*, 203 Kan. at 270. This is because verification adds no allegation or tenders any issue; it is a formal matter, the omission or imperfection of which is a mere irregularity that may be waived or cured by amendment without voiding jurisdiction. 203 Kan. at 270. When the record shows that notice was given and the court has jurisdiction over the parties and the subject matter, mere procedural defects do not render proceedings in probate void. See *Kline v. Orebaugh*, 214 Kan. 207, 214-15, 519 P.2d 691 (1974).

Everett presents no reversible error with respect to this issue.

*Did the District Court Err in Holding That Angella and Lisa Timely Commenced a Probate Proceeding?*

Everett contends that Angella and Lisa failed to commence the action properly when they filed their petition on April 16, 2012. As a consequence, he argues, the statute of limitations for admitting the will to probate expired, and any action seeking to enforce the will is time-barred.

The facts relating to this issue are uncontested. Application of legal principles to undisputed facts involves questions of law subject to de novo review. See *State v. Morris*, 276 Kan. 11, 15, 72 P.3d 570 (2003).

K.S.A. 59-2204 sets out the rules for commencing a probate proceeding:

> "A probate proceeding may be commenced in the district court by filing a petition and causing it to be set for hearing. When a petition is filed, the court shall fix the time and place for the hearing on it."

10

K.S.A. 59-617 sets out a time limitation for passing property under a will:

> "No will of a testator who died while a resident of this state shall be effectual to pass property unless a petition is filed for the probate of such will within six months after the death of the testator, except as hereinafter provided."

Although K.S.A. 59-617 requires only the filing of a petition within 6 months of the testator's death, K.S.A. 59-2204 requires something more to initiate an action and stop the statute of limitations from running—"setting down" for a hearing. "The mere filing of a petition in a probate proceeding without action resulting in its being set down for hearing does not stop the running of the statute of limitation." *In re Estate of Reed*, 157 Kan. 602, Syl. ¶ 9, 142 P.2d 824 (1943). While it is the responsibility of the district court to set a probate matter for hearing, the petitioner bears some responsibility for ensuring that the case moves forward.

This, then, is Everett's argument. First, there is a statutory requirement that a probate case be filed within 6 months of the death of the testator. Second, there is a caselaw requirement that simply filing is insufficient; a hearing must also be set down. Third, although Angella and Lisa timely filed their petition, they failed to cause the matter to be "set down" for a hearing because they failed to obtain a written, signed order from the district court setting a hearing date. Finally, because more than 6 months elapsed without a written, signed hearing order, the statute of limitations expired, with the result that Everett, as the sole surviving child of Beuford, would inherit the entire estate.

According to the panel below, the *Reed* requirement that a probate case be "set down" for hearing is inapplicable to the present case for two reasons. First, it no longer governs, because 1972 amendments to the probate code have rendered it obsolete, and, second, even if it does apply, the district court here properly "set down" the case for

11

hearing. We disagree with the Court of Appeals on the first point:  We find in the 1972 amendments no indication that the legislature intended to make the language requiring initiating a hearing to be superfluous.

We agree, however, with the panel's second point. The panel correctly noted that the purpose of the probate code is to assure the prompt marshalling of the assets and liabilities of a deceased so that legitimate debts may be paid and the remaining estate may be distributed, either in accordance with the deceased's wishes as expressed in a properly executed will, or, in the absence of such a will, as prescribed by statute. *Rickabaugh*, 51 Kan. App. 2d at 914.

While questioning the current validity of *Reed*, the panel also held that Angella and Lisa complied with the statutory requirements for setting a hearing. Nothing in K.S.A. 59-2204 explicitly calls for a written hearing order—*Reed* required only that a petition must be "set down" for hearing. *Rickabaugh*, 51 Kan. App. 2d at 923-24.

The Court of Appeals panel noted that this phrase has a distinct meaning in law: "'[t]o schedule . . . for trial or hearing, [usually] by making a docket entry.'" *Rickabaugh*, 51 Kan. App. 2d at 918 (quoting Black's Law Dictionary 1580 [10th ed. 2014]). Although caselaw applying the phrase is scarce, in *In Interest of MFB*, 860 P.2d 1140, 1148 (Wyo. 1993), the court held that a statutory requirement that juvenile court "set down" a cause for hearing means that a court must "enter[] the title of the action in the court's calendar." That is what happened in the present case.

The district court found that, although no written order for hearing was filed, "a hearing date on Judge Lindamood's calendar was obtained from the court by petitioner's counsel Karen McIlvain."

12

The district court went on to note:

"Although a written order for hearing could have been prepared and filed here, such is not required by [the probate statutes]. The District Courts of this state fix the *time and place for hearings* in various ways. Some judges have administrative assistants who handle their calendars. Some judges handle their own calendars. District court clerks in some judicial districts act as the judge's administrative assistant. Some court reporters have authority to schedule hearings on their judge's calendar. Some orders for hearing are put in writing and filed. Other orders for hearing are done verbally in coordination with the interested parties and counsel. It all comes down to determining a hearing date that works on the assigned judge's calendar. Once that date and time is obtained and agreed to by all concerned, the court has indeed fixed *the time and place for the hearing*."

In the absence of a statutory definition that contradicts the district court's explanation of what it means to cause a hearing to be set, Angella and Lisa fulfilled the statutory requirements: they filed a petition within 6 months of their grandfather's death and ensured that the district court placed the matter on its internal docket. We note that a requirement that valid court documents must be on paper with an actual signature attached would run counter to modern practices of electronic filing of documents and electronic dockets.

K.S.A. 59-2222 requires a court to "fix the time and place for the hearing thereof" when a petition is filed for the probate of a will. It does not set out a format for setting the hearing, and it places the burden of setting the hearing on the court.

In *Reed*, no action was taken in probate between the day the petition was filed in probate court, September 14, 1939, and the day that a waiver of notice of hearing petition was filed, January 24, 1941. Such inaction by the petitioner defeated the purposes of

13

promptly resolving claims of debtors and interests of legatees. It is not surprising this court held that the petitioner had a duty to initiate a hearing.

In the present case, however, a hearing *was* set. In fact, it was set for and held on May 14, 2012, less than 2 months after Beuford died. The will did not languish in court; it moved quickly through the probate process.

The only potential prejudice to Everett caused by a failure to obtain a written order setting a hearing would be lack of notice. Lisa and Angella timely published notice, however, and evidence was produced to the district court that Everett had actual notice of the hearing. K.S.A. 59-2208 provides the means for giving notice of probate proceedings "in such manner and for such length of time as the court considers reasonable." K.S.A. 59-2211 provides that defects in any notice or in its service that do not affect the substantial rights of the parties will not invalidate any proceedings after such notice and the proof of its service have been approved by the court.

As noted in various statutes and cases cited above, defects in probate procedures do not invalidate proceedings unless the defects impair the substantial rights of the parties. Everett cannot point to any harm that he suffered resulting from the lack of a signed judicial order setting a hearing date.

The Court of Appeals panel in *Clare*, 51 Kan. App. 2d 886, reached a different conclusion. In *Clare*, the decedent shot and killed his wife and then himself. He died intestate, and his wife's daughter filed a petition to open the estate for the purpose of filing a claim against it. The daughter's attorney corresponded by e-mail with the court's administrative assistant, who informed the attorney that she would place the hearing on the court calendar. The date and time were entered onto the district court's electronic docket. The attorney never provided a written order for hearing, and the court never

14

issued a written order. Notices of hearing and notices to creditors were published in the local newspaper.

The decedent's sister subsequently filed a petition for letters of administration in the same proceeding and obtained a signed written order for a hearing on her petition. The district court found that the daughter failed to cause her petition to be set for a hearing in a timely fashion under K.S.A. 59-2239 (time limitation for filing claims against estates), which thus barred her claims for probate assets. The Court of Appeals affirmed that holding.

The Court of Appeals panel considered two factors: first, local court rules required an "Order of Hearing" to be presented to the court for execution; and second, the K.S.A. 59-2204 language requiring "filing a petition and causing it to be set for hearing" in order to commence a probate action.

The panel looked to statutory language setting time limitations on providing notice of hearings and requiring orders for notice to be given. See K.S.A. 59-709(a); K.S.A. 59-2208; K.S.A. 59-2209; K.S.A. 2015 Supp. 59-2222(a). The panel went on to determine that an "order" is a "'written direction or command delivered by . . . a court or judge.'" *Clare*, 51 Kan. App. 2d at 896 (quoting Black's Law Dictionary 1270 [10th ed. 2014]).

The panel rejected the daughter's argument that her e-mail exchange with the court sufficed to satisfy the statutory requirement for setting a hearing: "An email exchange is not an order of the district court." *Clare*, 51 Kan. App. 2d at 897. The panel equated obtaining a written order of hearing to the civil code requirement of issuing summons. 51 Kan. App. 2d at 897-98.

The local rule issue is unique to *Clare* and will be discussed in the opinion for that case. The *Clare* holding that K.S.A. 59-2204 requires obtaining an executed written order, however, directly contradicts the holding in the present case. The *Rickabaugh* panel carried out a careful analysis of *Clare*, which is set out as follows.

First, construing the phrase "causing [the petition] to be set for hearing" to mean "'filing a court order confirming a hearing date'" requires an impermissible judicial rewrite of K.S.A. 59-2204. *Rickabaugh*, 51 Kan. App. 2d at 918. The court then analyzed the *Clare* arguments:

> "Had the legislature intended 'commencing' a probate proceeding under K.S.A. 59-2204 to include the filing of both a petition and an order setting a hearing date, that's what the statute would have said. But it does not. Conversely, the language of K.S.A. 59-2208 expressly provides the district court 'shall order notice to be given' in the manner it 'considers reasonable' or as 'required by law,' thus incorporating notice by publication outlined in K.S.A. 59-2209. The legislature drew a distinction between setting a petition for hearing and obtaining a district court order directing the manner of giving notice.
>
> "The probate code, thus, establishes three distinct steps a petitioner must take to request judicial action: filing of a petition outlining the action sought; 'causing' the petition to be 'set' for hearing; and then giving notice of the petition and hearing in the manner the district court orders. The statutory language does not require a distinct district court order establishing a hearing date—the hearing date will be incorporated into the notice a district court does order in the last step of the process. The order directing how the petitioner must give notice, therefore, places the hearing date 'of record' in the district court file. But an order is unnecessary to commence the proceeding under K.S.A. 59-2204.
>
> "All of that can be fairly and rather easily drawn from the language of K.S.A. 59-2204 and the procedures outlined in the probate code. In that respect, K.S.A. 59-2204 is unambiguous, so there is no reason to apply canons of construction to excavate

16

comprehensible meaning from ambiguity. [Citation omitted.] The *Clare* panel sought to settle a misperceived ambiguity in K.S.A. 59-2204 by unnecessarily invoking in pari materia for that purpose. [Citation omitted.] The canon of in pari materia calls for related statutes to be construed in a harmonious way, reconciling apparent conflicts, if possible, to effectuate legislative intent. [Citations omitted.]

"The *Clare* decision and Everett's argument functionally collapse the second and third steps in the probate process into a single requirement with troubling results. Under their approach, the probate code contains a technicality in the form of a written order confirming a hearing date the absence of which would prevent a creditor's petition to open an estate, as in *Clare*, or an executor's petition to probate a will from being timely presented. See K.S.A. 59-2239(1) (creditor's claim barred if estate not otherwise opened within 6 months of death); K.S.A. 59-2219 (content of petition for administration of estate); K.S.A. 59-2204 (commencement of probate petition). That would be true even if the petitioner otherwise secured a hearing date and then gave notice of the hearing in conformity with a court order entered after the 6-month limitation in K.S.A. 59-617 or in K.S.A. 59-2239(1).

"As we have discussed, such a reading of the probate code undercuts the fundamental goal of giving legal effect to wills and avoiding intestate distribution of an estate whenever possible. Second, it creates an anomaly in which a petition could be barred because a district court fails to promptly enter an order confirming a hearing date. For example, were a petitioner to present an order to the district court confirming a hearing for a petition to probate a will several days before the 6-month deadline, the petition would nonetheless be time barred if the order didn't get signed and filed until the following week. The testator's will would become unenforceable because a proposed order sat unattended in a district court office.

"Everett, thus, angles to evade Beuford's testamentary decision to disinherit him by reading into the probate code a requirement for an order that can't be found in the statutory language and then turning that phantom technicality into a potentially lethal trap. As Everett and the *Clare* panel would have it, a petitioner seeking to probate a will could be divested of that ability as the result of the district court's laxity in filing an order

17

—something over which the petitioner has no direct control. Although the *Clare* decision dealt with a creditor's petition, its construction of K.S.A. 59-2204 would be equally applicable to a petition to probate a will if we are mistaken about how the 6-month time limitation in K.S.A. 59-617 operates.

"We doubt the legislature intended to craft a procedural code in which a foreseeable bureaucratic foul-up carries such dire consequences. To the contrary, the legislature aimed to prevent that kind of catastrophe. Hence, the legislature chose contrasting statutory language in K.S.A. 59-2204 and K.S.A. 59-2208, reflective of the differing purposes of those statutes. Causing a petition to be set for hearing— commencing a probate proceeding—requires no order and effectively places the initiation of the proceeding within the petitioner's direct control. A district court's determination on how to give notice of the hearing on the petition requires the filing of a confirming order, a separate and later step intended to insure a fair hearing on the disposition of the petition.

"The *Clare* panel, then, ostensibly reads in pari materia the requirement in K.S.A. 59-2204 to set a petition for hearing (that makes no mention of an order) with statutes in the probate code referring to orders memorializing district court directions on giving notice of the petition and the hearing. [Citation omitted.] But K.S.A. 59-2204 deals with the initiation of a probate proceeding, and the other statutes address the disposition of a proceeding—substantively different steps in the process." *Rickabaugh*, 51 Kan. App. 2d at 919-21.

This court is now asked to choose which panel below was correct: Was the *Clare* panel correct in concluding that the statutory scheme requires counsel both to file a petition *and* to obtain a written order of hearing in order to avoid missing the statutory time limitations, or was the *Rickabaugh* panel correct in concluding that the plain statutory language does not require an order or does not require the order of hearing to be in writing and signed?

The *Rickabaugh* panel's analysis is persuasive, both in terms of its reliance on the language of the statutes in question and in its explanation of the policy supporting a flexible application of the requirement of setting an order. The statutory scheme requires the *court* to set a hearing upon the filing of a petition upon the petitioner's initiative. In both cases, counsel arranged with the court to have a hearing set. To then hold that counsel failed to have a hearing "set down" prepares a hidden trap for the unsuspecting attorney.

As the *Rickabaugh* panel noted, an attorney cannot control the action of a district court; counsel for a petitioner cannot "cause" the district court to enter an order. Counsel can, however, communicate with the district court and request a hearing date.

In neither *Clare* nor the present case does the challenger to the probate proceeding assert any cognizable harm or prejudice resulting from the internal docketing of the case, and in both cases the matters were set for hearing promptly, avoiding the delays against which *Reed* cautioned. The probate code generally disfavors technical inconsistencies as bars to probate, and the lack of a signed order in both cases is at most a technical deficiency.

When a lower-court opinion correctly sets out facts and analyzes the legal issues, this court may rely on that opinion. See *In re Estate of Garnand*, 177 Kan. 168, 169, 277 P.2d 602 (1954). The Court of Appeals language in *Rickabaugh* quoted above properly and lucidly articulates the law and is adopted by this opinion. Everett fails to establish error or prejudice, and the courts below are affirmed regarding this issue.

*Did the District Court Err When It Refused to Find That a Putative 1997 Will Revoked the December 10, 1992, Will?*

The district court and the Court of Appeals rejected Everett's claim that Beuford had executed a will in 1997 that revoked his 1992 will. Everett contends that both lower courts erred and abused their discretion in determining that the 1992 will was not revoked.

The burden of proving the revocation of a will lies on the party asserting the revocation. *In re Estate of Grisell*, 176 Kan. 209, 214, 270 P.2d 285 (1954). The district court determined that Everett failed to prove the existence of a will revoking the 1992 will. This determination constituted a negative finding, *i.e.*, a finding that the party asserting a claim did not sustain its burden of proof. In the absence of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice, the negative finding of a district court will not be disturbed on appeal. An appellate court may not nullify a district court's disbelief of evidence, nor may it determine the persuasiveness of evidence that the district court may have believed. *Cresto v. Cresto*, 302 Kan. 820, 845, 358 P.3d 831 (2015).

Everett urges this court to reverse the district court's conclusion that "the evidence fails to prove that Beuford Rickabaugh revoked his 1992 will by any of the methods set out in K.S.A. 59-611."

K.S.A. 59-611 sets out the mechanics for revoking a written will:

> "Except as provided in K.S.A. 59-610 [when testator marries or divorces after making a will], no will in writing shall be revoked or altered otherwise than by some other will in writing; or by some other writing of the testator declaring such revocation or alteration and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself or herself or by another person in the testator's presence by his or her direction."

20

Thus, in order to prevail at the district court, Everett would have had to prove that Beuford executed a later will or other writing declaring his revocation of the 1992 will. In order to prevail on appeal, Everett would have to show that the district court arbitrarily ignored undisputed evidence or relied on some extrinsic consideration, such as bias, in reaching its result. The record on which he relies falls far short of supporting either of those conclusions.

Karen McIlvain, an attorney in Greenwood County, testified that Beuford approached her in 2007 to discuss estate planning. She prepared drafts of various estate-planning documents for Beuford over the course of the next several years. Among those documents was the final draft of a trust that would have disposed of Beuford's private property. She explained to Beuford the steps that would be necessary in order to revoke his earlier will. She testified that Beuford never signed the trust or a draft of a will that she had prepared. She further testified that it was not Beuford's wish to revoke the earlier will.

McIlvain was present when Beuford's safe deposit box was opened at the bank. The box contained the 1992 will and the 1997 codicil. It contained no document that would constitute a new will or a revocation of the earlier will or codicils.

Applying the negative-finding standard of review, we cannot conclude that the district court arbitrarily disregarded undisputed evidence or considered some extrinsic factors such as bias, passion, or prejudice. To the contrary, Everett failed to produce any substantial evidence showing that Beuford ever executed any testamentary documents subsequent to the codicils introduced in court. Even if it were possible to conclude that he may have considered a later revision, there was no evidence that such a revision was intended to revoke his earlier will and codicils.

No reversible error occurred under this issue.

Finding no error in the analysis and conclusions of either the district court or the Court of Appeals as to any of the issues raised in the appeal or petition for review, we affirm both.